JULIUS ROSENBERG & another *vs.* NATIONAL DOCK AND STORAGE WAREHOUSE COMPANY.

MAX RUBIN & another *vs.* JULIUS ROSENBERG & another.

Suffolk.    March 9, 10, 1914. — September 11, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Warehouse Receipts Act.    Warehouseman.    Conversion.*

The provision of the warehouse receipts act, St. 1907, c. 582, § 21, that "a warehouseman shall be liable to the holder of a receipt for damages caused by the non-existence of the goods," does not undertake to define the holder of a receipt, and does not change the rule established in this Commonwealth by *Sears* v. *Wingate*, 3 Allen, 103, that a principal, whose agent has authority to issue receipts on the delivery of goods to the principal, is not bound by a receipt issued by such agent for goods which have not been delivered to the principal.

*Whether* a warehouseman, whose agent has authority to issue receipts on the delivery of goods to the warehouseman and who issues a receipt for goods which the warehouseman never received, may be made liable upon such instrument if the warehouseman was negligent in the way in which he allowed such agent to conduct his business in regard to the issuing of receipts, here was mentioned as a question not passed upon in this case, where it was found by the trial judge on evidence not reported that there was no negligence on the

part of the warehouseman and where upon the facts stated in the report of the judge his finding was not wrong as matter of law.

In an action for the conversion of fifty bales of rags, it appeared that the manager of a warehouse corporation undertook to sell personally fifty bales of rags to the defendant and gave him what purported to be a receipt of the warehouse corporation for the rags, which was void against that corporation because it represented no rags delivered to the corporation, that the manager then changed the marks on fifty bales of rags in the warehouse belonging to the plaintiff and delivered those bales to the defendant in exchange for the supposed warehouse receipt, that afterwards the warehouse corporation lent to the plaintiff without interest an amount of money equal to the value of the rags with an agreement that, if the plaintiff should recover damages from the defendant, the loan should be repaid at the time and in the proportion that such recovery should be had, and¡ that at the same time the plaintiff undertook to assign all his claims against the defendant to the warehouse corporation and appointed that corporation his attorney to sue the defendant in the plaintiff's name or otherwise for the conversion of the fifty bales of rags. The defendant contended that the money paid to the plaintiff by the warehouse corporation, which purported to be a loan, was paid by the corporation in satisfaction of the plaintiff's claim against the corporation for the conversion of the rags, that thereby the title to the rags was vested in the warehouse corporation, and that therefore the plaintiff had no title at the date of the writ to maintain an action for the conversion. · *Held*, that the arrangement between the warehouse corporation and the plaintiff was as matter of law a loan, as it purported to be, and afforded no defense to the plaintiff's action against the defendant for the conversion of the rags.

LORING, J. These two actions grow out of a purchase of rags made by Rosenberg Brothers (the plaintiffs in the first action) from one Ripley, who was the manager of the warehouse of the defendant warehouse company. At the date of the sale in question Ripley had no rags in the warehouse. In spite of that he made out and delivered to Rosenberg Brothers what purported to be a non-negotiable warehouse receipt of the defendant warehouse company for seventy bales. This receipt was in the usual form, signed by him as general manager, but no marks were given on it for the bales. This was on January 28, 1913. On the first of the following March Ripley caused the marks on seventy bales belonging to M. Rubin and Company (the plaintiffs in the second action), then in store in the defendant's warehouse, to be changed from $\boxed{D}$ to $\boxed{R}$ , and delivered these rags to Rosenberg Brothers. Just before March 1 Ripley had bought of Rubin and Company seventy bales of rags. But by the terms of this purchase the rags were to be retained by Rubin and Company

until paid for by Ripley, and no payment under that contract of purchase had been made by Ripley on March first, when he delivered the seventy bales to Rosenberg Brothers. Later he paid Rubin and Company for twenty of these seventy bales and got a delivery order for them from Rubin and Company.

The first action is brought by Rosenberg Brothers to recover from the warehouse company for the fifty bales for which Ripley did not get a delivery order from Rubin and Company.

There was another somewhat similar transaction which was covered by the action brought by Rosenberg Brothers against the warehouse company. But the second cause of action confessedly fails if the first fails, and it is not necessary to state it. The declaration contained eight counts. The first four related to the transaction which we have stated, and the second four related to the second cause of action which it is unnecessary to state.

In the first three the plaintiffs counted upon the fact that the warehouse receipt for the seventy bales, received by Rosenberg Brothers on January 28, was delivered to it by the defendant warehouse company, and upon § 21 of the warehouse receipts act, which provides that "a warehouseman shall be liable to the holder of a receipt for damages caused by the non-existence of the goods." In the fourth the plaintiffs counted upon the negligence of the warehouse company in the way it allowed Ripley, its manager, to carry on its business.

Before the warehouse receipts act (St. 1907, c. 582), it was the settled law of this Commonwealth that a principal is not liable where his agent (with authority to issue receipts on the delivery of goods) issues a receipt for goods which had not been delivered. *Sears* v. *Wingate*, 3 Allen, 103. But on this point there is a great conflict between the States. The decisions are collected in Williston on Sales, § 419. The ground on which the plaintiffs in the first action contend that they are entitled to recover is that the rule of *Sears* v. *Wingate* was changed by § 21 of the warehouse receipts act.* But no change in the rule of *Sears* v. *Wingate* was made by that section. If this conflict in the authorities had

---

* St. 1907, c. 582, § 21, so far as material is in these terms:

"A warehouseman shall be liable to the holder of a receipt for damages caused by the non-existence of the goods, or by the failure of the goods to correspond with the description thereof in the receipt at the time of its issue."

been the result of a difference upon a question of the law of warehouse receipts it could and doubtless would have been ended by this uniform warehouse receipts act enacted in this Commonwealth in St. 1907, c. 582.    But the conflict in place of being a difference of opinion as to the law of warehouse receipts was a difference of opinion upon one of the general principles of the law of agency.    The general principles of the law of agency could not with propriety be dealt with and made uniform in a warehouse receipts act.    Nor could an exception to the general law of agency be made, so far as warehouse receipts are concerned, where the former law of agency was kept unchanged in case of receipts issued by other agents under what from a legal point of view were the same conditions.    It was therefore inevitable that this conflict which existed at common law should continue under the uniform warehouse receipts act.

Manifestly it was for these reasons that § 21 of the warehouse receipts act was limited to providing that a warehouseman should be liable for the non-existence of the goods, and did not undertake to state the facts which did or did not make one a holder of a receipt.    *Sears* v. *Wingate, ubi supra,* is still law in this Commonwealth and is decisive against the plaintiffs' allegation in each of the first three counts that they are the holders or the "bearer" of a warehouse receipt issued to them by the defendant warehouse company.    For this reason they have failed to make out the case stated in the first three counts of the first action.

It is enough to say of the fourth count that the judge * found as a fact that "The warehouse [company] was not negligent in failing to watch Ripley more sharply or to catch him more quickly."    That is to say, the judge found that there was no negligence on the part of the warehouse company.    The evidence before the judge is not before us.    On the facts stated in his report the finding was not wrong as matter of law.    We say that the finding was not wrong as matter of law because that is the question we have to consider.    In stating the point in that way we do not mean to intimate that the finding would have been the other way

---

* *Fox,* J., before whom the cases were tried without a jury.  He found for the defendant in the first case and in the second case found for the plaintiff in the sum of $1,696.27, and reported the cases for determination by this court.

had the question of fact been before us. Under these circumstances it is not necessary to consider the questions which would have arisen had the judge found as a matter of fact that the warehouse company was negligent in the way in which it allowed Ripley to conduct its business.

The only defense which is made to the second action is one arising out of a subsequent transaction between the plaintiffs in that action and the warehouse company. The defendants in the second action now admit that but for that subsequent transaction Rubin and Company would have had a right to recover from Rosenberg Brothers for the conversion of fifty bales of rags belonging to Rubin and Company and delivered by Ripley to Rosenberg Brothers. The subsequent transaction was as follows: On March 27, 1913, the warehouse company handed to Rubin and Company $1,874.84, under an arrangement which is set forth in Exhibit X, a copy of which is printed below.* At the same time Rubin and Company undertook to assign to the warehouse company all their claims against Rosenberg Brothers, and appointed the warehouse company their attorney to enforce in their name or otherwise, their right to recover from Rosenberg Brothers for the conversion of the fifty bales of rags. The contention of the defendants in the second action is that this was a payment by the warehouse company to Rubin and Company of Rubin's claim against

---

* "Exhibit X.

"Boston, March 27, 1913.

"Borrowed and received from the National Dock & Storage Warehouse Company the sum of $1,874.84, being a loan without interest pending the ascertainment of whether Rosenberg Bros. of Chelsea or any other person, are or is liable to M. Rubin & Company for the conversion or loss of fifty bales of rags; and in the event that M. Rubin & Company recover from Rosenberg or any other person for the loss or conversion of said fifty bales of rags and receives funds by virtue of said recovery, we agree to refund this loan to the National Dock & Storage Warehouse Company at the same time as and in the same proportion that said recovery shall be made. This receipt involves no personal liability but simply a liability to repay from any funds recovered of Rosenberg Bros.

Witness                                          M. Rubin & Co.
A. A. Ginsberg.                                  By Joseph Rubin."

it (the warehouse company) for the conversion by the warehouse company of the fifty bales of rags in question, and that thereby the title to the rags vested in the warehouse company. That as a result Rubin and Company, at the date of the writ in the second action, had no title on which an action of conversion could be maintained.

It is plain that this defense would not have been made out if the warehouse company, recognizing Rubin and Company's claim against it, had agreed that the warehouse company might proceed in Rubin and Company's name to prosecute their (Rubin and Company's) claim against Rosenberg Brothers and if successful to hand the proceeds to them (Rubin and Company) and if unsuccessful to pay Rubin and Company's claim against it (the warehouse company) out of its own pocket. The only difference between the arrangement made and that suggested above is that the warehouse company put Rubin and Company in funds in the first instance by way of a loan. We are of opinion that this subsequent arrangement is in law what it purports to be, and that the defense is not made out.

By the terms of the report, as we interpret it, judgment must be entered in the first action for the defendant, and in the second action for the plaintiffs, in the sum of $1,696.27, with interest from January 6, 1914, which is the date of the finding.

*So ordered.*

*Lee M. Friedman,* for the Rosenberg Brothers.

*R. Homans,* (*L. Goldberg* with him,) for the plaintiff Rubin and for the defendant warehouse company.