R. J. REYNOLDS TOBACCO COMPANY *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   April 6, 1937. — September 16, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Carrier*, Of goods.   *Bill of Lading.*

A bill of lading issued by a railroad corporation acknowledging receipt of goods might be shown not to be an admission that there was a complete delivery of the goods for immediate transportation.

The delivery of goods that will charge a common carrier with responsibility as such for their loss must be a complete delivery for the purpose of immediate transportation.

Evidence that a warehouseman loaded goods for a shipper into a car of a railroad corporation in the warehouse and sealed the car, that the railroad corporation receipted for the goods upon a bill of lading, and that then, according to a practice of the parties, the warehouseman locked the car in the warehouse with instructions to his watchman that employees of the railroad corporation might enter and remove the car at will, did not warrant a finding that the goods had been delivered to the railroad corporation so as to make it liable as a common carrier to the shipper if they were stolen from the car in the warehouse.

CONTRACT OR TORT.   Writ in the Municipal Court of the City of Boston dated September 4, 1935.

The action was heard by *Carr*, J., who found for the plain-

tiff in the sum of $17,680.16. A report to the Appellate Division was ordered dismissed. The defendant appealed.

*R. W. Hall*, for the defendant.

*E. P. Shaw, 3d*, for the plaintiff.

LUMMUS, J. The Fitz Warehouse and Distributing Company operated in Boston a public warehouse, in which it stored cigarettes for the plaintiff. On January 4, 1935, before four o'clock in the afternoon, the warehouse loaded for the plaintiff five hundred cartons of cigarettes into a freight car belonging to the defendant which was on a side track within the warehouse, and sealed the doors of the car. The warehouse then made out on one of the defendant's blank forms a bill of lading showing that the goods were received by the defendant from the plaintiff in Boston for carriage to First National Stores Inc. in Somerville. The bill of lading was taken by an employee of the warehouse to a freight office of the defendant, where it was marked "Received Jan. 4, 1935" and signed by an agent of the defendant at about five o'clock in the afternoon. The freight car remained within the warehouse, the doors of which were locked at six o'clock in the afternoon. The warehouse had no means of moving the car. The practice was for the defendant to send a police officer in its employ to seal the doors of the car with its own seals, and to send with him or soon after him a shifting engine and crew to take the car away. This the defendant could do at any time after the car was loaded and the bill of lading signed. But it was very common for cars to be taken away after the doors of the warehouse were locked at six o'clock in the afternoon. After that hour, the defendant could not take a car, nor even get access to it, without the aid of the watchman employed by the warehouse, who was instructed to allow employees of the defendant to enter and remove cars at will.

On the night in question, apparently about two o'clock in the morning of January 5, 1935, the police officer employed by the defendant inspected the car in question, preparatory to having the shifting crew remove it from the warehouse. He found that the seals put on by the warehouse had been broken, and the greater part of the cigarettes

stolen.   The larceny occurred between six o'clock in the afternoon and two o'clock in the morning.

Upon the first count of its declaration, alleging a breach by the defendant of its obligation as a common carrier, the judge found for the plaintiff.   He found for the defendant on the other counts.   The Appellate Division dismissed a report, and the defendant appealed to this court.

It is not questioned that if the defendant had possession of the goods as a common carrier it is liable for their loss by theft.   *Hastings* v. *Pepper,* 11 Pick. 41.   *Thomas* v. *Boston & Providence Rail Road,* 10 Met. 472.   *Lewis.* v. *Smith,* 107 Mass. 334, 338.   *Houle* v. *Lewonis,* 245 Mass. 254. *Bonfiglio* v. *New York, New Haven & Hartford Railroad,* 292 Mass. 287.

The main question is, whether the defendant had the goods in its possession as a common carrier when they were stolen.   By the bill of lading it acknowledged having received the goods.   But that was only an admission, and the true facts could be shown to contradict it.   *Sears* v. *Wingate,* 3 Allen, 103.   *Hall* v. *Mayo,* 7 Allen, 454.   *Rosenberg* v. *National Dock & Storage Warehouse Co.* 218 Mass. 518, 520.   *Missouri Pacific Railway* v. *McFadden,* 154 U. S. 155, and cases cited.   *Maddock* v. *American Sugar-Refining Co.* 91 Fed. 166.   *Cunard Steamship Co. Ltd.* v. *Kelley,* 115 Fed. 678.   *The Capitaine Faure,* 10 Fed. (2d) 950, 958 *et seq.*   It is true that § 22 of the Pomerene Act (Act of August 29, 1916, c. 415, § 22; 39 U. S. Sts. at Large, 542; U. S. C. Title 49, § 102) makes a carrier liable in some circumstances for goods covered by a bill of lading though never received by the carrier.   *Gleason* v. *Seaboard Air Line Railway,* 278 U. S. 349, 354, 355.   *Josephy* v. *Panhandle & Santa Fe Railway,* 235 N. Y. 306.   But that section does not apply to this case, because (1) the shipment was a purely intrastate one, which the Federal act does not govern (Act of August 29, 1916, c. 415, § 1; 39 U. S. Sts. at Large, 538; U. S. C. Title 49, § 81), and (2) the plaintiff is not one who has "given value in good faith, relying upon the description therein of the goods."   *Louisville & Nashville Railroad* v. *Cullman Warehouse, Inc.* 226 Ala. 493.   The latter reason

likewise prevents the application of our own statute of similar purport, the uniform bills of lading act, G. L. (Ter. Ed.) c. 108, § 22, which governs intrastate shipments.

The trial judge ruled that to charge the defendant with the loss of the goods it must have had "actual and exclusive possession of the goods," with the qualification that the ruling was "given with the understanding that possession in . . . [this request] includes constructive possession, such as is acquired (without attempting a complete definition) by delivery by the shipper at such a place and in such a manner as the carrier actually or by implication has agreed to receive the goods." He refused the following requested ruling: "That if the goods were behind locked doors on the premises of the Fitz Warehouse and Distributing Company, the defendant is not liable," saying that this request was "refused for the reason that as against the defendant, the doors were not locked. The doors . . . were always ready to open at defendant's request." He refused also requested rulings that the plaintiff cannot recover because "there is no evidence that five hundred cartons of cigarettes were delivered to the defendant" and "there is no evidence that the defendant ever acquired actual and exclusive possession of five hundred cartons of cigarettes."

It is unnecessary to examine these requested rulings in detail. The judge apparently thought that the defendant had assumed responsibility for the car and its contents as soon as the car was loaded and the bill of lading issued. The delivery that charges a carrier with responsibility as such must be "a complete delivery for the purpose of immediate transportation." *Barron* v. *Eldredge*, 100 Mass. 455, 458. For a collection of cases, see 22 Am. L. R. 970. If the car had been on a siding in the open, beyond the control of the warehouse, very likely possession and responsibility on the part of the carrier could have been found. *Pittsburg, Cincinnati, Chicago & St. Louis Railway* v. *American Tobacco Co.* 126 Ky. 582. *Crane, Hayes & Co.* v. *New York, New Haven & Hartford Railroad*, 132 Misc. (N. Y.) 682. In the present case, however, before moving a car, the practice was for a railroad police officer to come and

seal the car doors. It was obvious that the defendant might not be ready to move the car until after the doors of the warehouse had enclosed it at six o'clock in the afternoon. After that hour the defendant could not move the car nor even gain access to it without aid from the warehouse. The bill of lading evidently was issued in anticipation of a taking of possession at a later hour. A majority of the court think that, upon the evidence, it could not properly have been found that the defendant had obtained any possession, actual or constructive, of the car in question. In the opinion of the majority the judge should have ruled, in accordance with the defendant's request, that the plaintiff could not recover because "there is no evidence that five hundred cartons of cigarettes were delivered to the defendant." The order of the Appellate Division dismissing the report is reversed, and under G. L. (Ter. Ed.) c. 231, § 124, judgment is to be entered for the defendant.

*So ordered.*