## JEPPSON v. ERDMANN et al.

No. 3802.   Decided July 12, 1922.   Rehearing denied September 16, 1922.   (209 Pac. 203.)

1. TRUSTS—FACTS CONNECTED WITH EXECUTION OF ABSOLUTE DEED HELD NOT TO GIVE RISE TO EXPRESS TRUST. A husband, being in ill health, executed an absolute deed to his wife, but before he signed the same he expressed the wish that his daughter should receive a portion of his personal effects. The daughter's husband was a man of uncertain disposition, and the father had expressed doubts as to the wisdom of conveying property to the daughter in such a way as to be subject to the control of her husband. *Held*, on the facts surrounding the execution of the deed, that the mother, the grantee, could not be held as trustee for the daughter.

2. TRUSTS—WRITING SIGNED BY GRANTEE IN DEED HELD NOT BINDING RECOGNITION OF EXISTENCE OF TRUST. Where a father, who had no confidence in a son-in-law, executed an absolute deed to his wife, and expressed a verbal wish that she might provide for the daughter out of the property, a writing signed by the grantee at the instigation of the son-in-law, after the death of the grantor, reciting that the daughter "is the owner of a one-third interest under the wish of said" grantor, "expressed before his death, to be transferred to her at my wish and option," was not a binding recognition of the existence of a trust, being no more than an acknowledgment by the grantee that it was the wish of the deceased grantor that the daughter should have her share of his property to be transferred to her at the "wish and option" of the grantee.

GIDEON, J., dissenting in part.

Appeal from District Court, First District, Box Elder County; *A. A. Law*, Judge.

Action by Blanch G. Jeppson against Ada R. Erdmann and others. From a judgment for plaintiff, defendants appeal.

REVERSED AND REMANDED.

*Young & Davis*, of Brigham City, for appellants.

*J. D. Call*, of Brigham City, for respondent.

CORFMAN, C. J.

The plaintiff brought this action against the defendants, seeking to impose a trust in her favor on certain real and personal property owned by one John F. Erdmann, at Brigham City, Utah, during his lifetime, and by him conveyed and transferred shortly before his death, to his wife, the defendant Ada R. Erdmann. The plaintiff is a daughter, and the defendant Harvey L. Erdmann the son, of John F. and Ada R. Erdmann. The defendant Lavon J. Erdmann is the wife of Harvey L. Erdmann.

The pleadings in the case are very voluminous on the part

of the respective parties to the action. It would be imprac-
ticable to set them forth here, even in substance. It must
suffice to say that but a single issue is raised by the facts
pleaded, viz. whether or not a trust was created with respect
to the property involved in the action. The action being an
equitable one, the case was tried to the court sitting without
a jury. The evidence was not materially in conflict. The
district court found for and rendered judgment in plaintiff's
favor. The defendants on this appeal have assailed the find-
ings of fact, conclusions of law, and judgment of the trial
court, and insist that they are not supported by the evidence
and that the judgment rendered was contrary to law.

The evidence shows that John Erdmann died intestate at
Brigham City, Utah, April 14, 1920, leaving surviving him
the defendant Ada R. Erdmann, his widow, and their two
children, Harvey L. Erdmann, also a defendant, and Blanch
G. Jeppson, the plaintiff in this action; that he had, during
his lifetime, accumulated at Brigham City real and personal
property of the approximate value of $33,000; that the real
property consisted of a home and certain business properties
all of the value of about $22,000; that the personal property
consisted of stocks, Liberty bonds, and cash on deposit in
banks to the amount of about $11,000; that he was taken sick
about one year before his death, and during that time fre-
quently spoke of how he would like to leave his property, to
members of his family, neighbors, friends, and close business
associates; that he always expressed a desire that his wife
and son should have the real property, and that the plaintiff,
his daughter, should have her share out of the personal prop-
erty; that he was very devoted to all members of his family
and trusted implicitly in his wife, the defendant Ada R.
Erdmann; that his daughter, the plaintiff Blanch G. Jeppson,
some years previous to his death, had domestic difficulties
with her husband which terminated in a divorce; that shortly
after the divorce she and her husband, Royal M. Jeppson,
remarried and moved to Blackfoot, Idaho, where they pur-
chased a home, at which place they have since resided with
their seven children. It seems that, owing to the trouble

arising out of the domestic difficulties between the plaintiff and her husband, which had culminated in a divorce proceeding, considerable feeling was engendered in the Erdmann family against Royal M. Jeppson, and a fear was expressed that, if the plaintiff had any part of the property, Jeppson would squander it.

On November 15, 1919, John F. Erdmann called to his home an attorney and had two deeds prepared, conveying certain real property known as the home, one parcel to his wife, the defendant Ada R. Erdmann, and another parcel to his son, the defendant Harvey L. Erdmann. At that time he announced that he had already conveyed to the plaintiff a portion of said premises and that she had her deed; that he desired his wife to have a portion, as she had put some of her own money into it; and that he also desired his son, Harvey L., to have his portion. December 3d, following, John F. Erdmann called upon an attorney and had deeds prepared conveying certain business property, in severalty, to the defendants Ada R. Erdmann and Harvey L. Erdmann. Later the son reconveyed the business property he had received to his father. April 12, 1920, the decedent was very sick, and it was suggested by his friends and business associates that he fix up and make a settlement of his property affairs. A meeting was held at the family residence for that purpose. At that meeting, by a final disposition, all of the property, both real and personal, then remaining in the name of the decedent, was conveyed and transferred to the wife, the defendant Ada R. Erdmann. Before making final disposition of his remaining property, he expressed a wish and desire that the plaintiff should have "her share" out of the personal property. All of the instruments of conveyance and transfer were absolute in form, and were made and delivered to the defendant Ada R. Erdmann without any reservation whatsoever. On the occasion last mentioned there were present a few friends and neighbors, among them Thomas H. Blackburn, a bishop in the church of which the deceased was a member. Said Blackburn was a witness at the trial, and testified concerning the transaction in substance and effect as follows:

Appeal from First District

"I was present at the time the deed marked 'Exhibit C' was signed by John F. Erdmann on April 12, 1920. The matter was up before John F. Erdmann as to his signing some papers, a deed and bank certificates, so they could keep the matter out of court; that it might be settled up by signing the deeds over to his wife, and also the bank certificates. Mr. Erdmann seemed to hesitate for a little time, and we spoke to him, of course, and tried to show him it was the proper way to do, to save litigation, if he would sign those papers over to his wife. He mentioned his daughter Blanch. He seemed to demur a little on her account; that she was not there, and that he wanted Blanch taken care of. As I remember it now, I said to him that if, if he would sign these papers over to his wife, she would take care of Blanch and Harvey. Mrs. Erdmann and Harvey were present at the time. Mr. Erdmann then signed the deed and the bank certificates. Mrs. Erdmann did not say anything about it. She did no talking, but was interested in the transaction."

One John F. Merrill, who was also present at the time, testified concerning what took place as follows:

"Mrs. Erdmann did not say anything about it. She did no talking, but was interested in the transaction. When the deed, Exhibit C, was signed, there was very little said. I know Mr. Erdmann hesitated; that is, he said, 'I want Harvey to have that piece.' I never heard' Blanch's name mentioned while I was there. Figgins and Blackburn were both there when I came. Mr. Erdmann kind of hesitated. He said, 'I want Harvey to have that piece of real estate on Main street,' but I never heard him mention Blanch's name. I have discussed with John F. Erdmann a few times concerning his intention with respect to his property. That was after his last sickness, in December, 1919. He said he wanted Harvey to have the interest in the real estate with his mother; that Charlie did not want to mix up with Jeppson, nor he did not. He had had enough trouble with Jeppson already. He said he wanted to do the right thing by Blanch; that he expected some time her and her children to be back on their mother. Jeppson had forsaken them once, and perhaps he would again. I never heard him say that her mother or Harvey was to hold it for her. There has been bitter feelings between Mr. and Mrs. Erdmann and Jeppson. He wanted it so that, if Blanch ever came home to her mother, she would have something to take care of her own."

One Henry M. Figgins, a witness who was present at the time of the transaction, testified at the trial as follows:

"John F. Erdmann was then quite low. I took his acknowledgment to a warranty deed from him to Ada R. Erdmann, dated April 12, 1920. We presented the instrument for his signature. He hesi-

tated for a time, and he made some mention—I don't remember the words that he used, he made some mention—as to his daughter Blanch's part, and Bishop Blackburn, as I remember it now, explained to him that she would be taken care of. I don't remember the words, but I do remember the substance. That is the reason why he hesitated, was on account of his daughter Blanch. When that was stated to him that she would be taken care of, that Mrs. Erdmann would have the property in her hands and would take care of her along that line, he make his mark."

Nels Jensen, a witness in the case, testified:

"I had a talk with John F. Erdmann several times regarding how he wanted his property transferred. He said he wanted his wife and Harvey to have the business property; that there was enough certificates and bonds for Blanch for her share. He said he did not want Jeppson mixed up in the business property. He said, 'Charlie cannot get along with him, and I cannot get along with him, either. I am afraid he will make trouble for mother.'"

C. M. Erdmann, another witness in the case, testified as follows:

"I am a brother of John F. Erdmann. He and I were partners for years, and we owned the business property together. I was present on the 12th of April, 1920. * * * I never heard a word said about Blanch. * * * He always wanted Harvey to have one-fourth interest in the business property. He said 'Charlie, do you think you and my wife and Harvey can get along?' I said, 'Sure we can.' He said he was going to leave the property with Mrs. Erdmann. He was afraid of trouble with Jeppson. They had trouble; that he was afraid he would spend the money. John F. Erdmann was afraid, if he deeded the property over to Blanch, that Royal would get the property and squander it away. He deeded everything to his wife, and then said, 'Mother, is everything all right now?' Nothing was ever said about a trust. No trust was ever mentioned. It was always his main talk, fixing it so Blanch would be protected."

The plaintiff in her own behalf testified:

"I never had any conversation with father regarding the fixing up of his property. Father came to Blackfoot and spent three weeks with me, but he never mentioned his property, or how he was going to dispose of it. I never heard of any trust mentioned. I always understood that mother was to get the home. She had put her money in it. She got some money from her parents' estate. I have never had very much conversation with any one concerning this property. My husband, Royal, has done much of the talking."

The evidence further shows that since the death of John

F. Erdmann, and before the trial of this case, the defendant Ada R. Erdmann conveyed to the defendant Harvey L. Erdmann the business property which the decedent expressly desired him to have. The record also shows that Ada R. Erdmann, out of respect to the wishes of the decedent, has paid to the plaintiff from time to time cash, or its equivalent, the sum of $5,050. It also appears from the evidence that both of the defendants, Ada R. Erdmann and Harvey L. Erdmann, since the death of the father, have at all times manifested an intention that the plaintiff should share in the estate of the decedent left to the mother in the manner disclosed by the record. It further appears that during the month of January, 1921, Ada R. Erdmann, while upon a visit at the home of the plaintiff at Blackfoot, Idaho, and on the eve of her departure, was called upon to sign a so-called receipt, wherein it was recited that of the property conveyed to her by the decedent plaintiff "is the owner of a one-third interest under the wish of said John F. Erdmann, deceased, expressed before his death, to be transferred to her at my [Ada R. Erdmann's] wish and option." In the execution of said instrument plaintiff also signed her name in acknowledgment of receipt of the moneys theretofore paid to her by said defendant.

From the facts, substantially as herein stated, the trial court found for the plaintiff, and concluded "that the plaintiff is entitled to a decree of this court that she is the owner of an undivided one-third interest in the property of John F. Erdmann, deceased, and by him deeded or conveyed to the defendant Ada R. Erdmann, and that the said Ada R. Erdmann received the same in trust for the plaintiff." The court then proceeded to render judgment against all the defendants for $6,426 (balance after paying $5,050), with interest thereon at the legal rate from the date of the death of decedent, April 14, 1920, and costs. It is further provided in the judgment or decree that the real property conveyed by the decedent to the defendant Ada R. Erdmann stand charged with a lien for the payment of said sum of $6,426 and interest, and that plaintiff have execution therefor against the said real property.

We do not think that, under the facts and circumstances as disclosed by this record, the judgment and decree of the district court should be permitted to stand. As we view the case, there is absolutely nothing in it to justify the trial court's decision upon either legal or equitable grounds. Certainly no express trust was created by what was said, or by the acts performed by the decedent in conveying his property to his wife. Nor do we think that it may be reasonably implied, under the facts and circumstances, that any trust was created with respect to the property taken and received by the defendant Ada R. Erdmann. The deeds and instruments of transfer imposed no conditions, made no reservations whatever, but were absolute in their form and meaning, and there was not the slightest expression or intimation on the part of the grantor that they were not to be taken and received for that which upon their face they purported to be. The grantee made no promise whatever as a condition of her receiving them. This is a case where, in the last analysis, the decedent had believed it would be for the best interests of his family, the wife and children, that the good wife and mother should be possessed with all that he had. He trusted and believed in her good judgment, and no doubt thought that in the course of time she would provide for their children's future welfare in the best way that her good common sense and prudence might dictate.

With that thought in mind, he gave what he had to the defendant Ada R. Erdmann and died content. Of course, it was the wish and desire of the decedent that his children should share in his property, and undoubtedly he died believing that by thus leaving it they ultimately would. However, his mere wish or desire, under the facts and circumstances, did not create or impose a trust in plaintiff's favor upon the property conveyed. Nothing more than a mere moral duty or obligation rested upon the defendant Ada R. Erdmann to respect the wishes of decedent. That the defendant Ada R. Erdmann has at all times respected the wishes of the decedent, one has but to read the record to be convinced. But, be that as it may, the equity powers of the

court cannot be successfully invoked to enforce merely moral obligations, more especially in cases of this nature, where no promise was made by the grantee, nor any fraud perpetrated in the procurement of the conveyance. 39 Cyc. 178; *Clester* v. *Clester*, 90 Kan. 638, 135 Pac. 996, L. R. A. 1915E, 648; *Lafayette Street Church Soc.* v. *Norton*, 39 L. R. A. (N. S.) 917, note 5.

However, it is contended by the plaintiff that the defendants admitted a trust relation and have pleaded full compliance therewith; that the defendant Ada R. Erdmann, by the execution of the so-called receipt, admitted that the plaintiff was the owner of an undivided one-third interest in the property involved in this action, and that the title thereto was being held in trust for plaintiff by the defendants. We are unable to share in this conclusion made by the plaintiff for two reasons: First, the defendant Ada R. Erdmann was procured to sign the instrument referred to at the instigation of Royal M. Jeppson, alone, and under circumstances which we think clearly show that his designs in obtaining it were of the most reprehensible character. No court of equity ought to give that instrument a great deal of consideration, even if the contents were of the purport claimed for it by the plaintiff. Second, as we interpret the receipt, in the light of the evidence, it does not mean, nor was it intended to mean, more than that she acknowledged that it was the wish of the decedent that plaintiff should have her share of his property to be transferred to her at the "wish and option" of Ada R. Erdmann, the signer. That is far from any admission that Ada R. Erdmann was, or that she is now, either legally or equitably bound to transfer all or any part of said property to the plaintiff; nor was it an admission that she was even morally bound to do so.

The defendants in this action have, by their separate answers, pleaded and proved that the plaintiff wrongfully claims an estate or interest in and to their respective parcels of land, adversely to them, and have prayed for the affirmative relief that their titles be quieted thereto. That relief should have been granted the defendants by the district court.

It is therefore ordered that the judgment heretofore entered in this cause in plaintiff's favor, and against the defendants and each of them, be and the same is hereby reversed, vacated, set aside, and held for naught.

It is further ordered that the cause be remanded to the district court, with directions that judgment be entered herein to the effect that plaintiff has no estate, right, title, or interest whatsoever to the lands and premises set forth and described in her complaint herein, nor to any part or parcel thereof, and that the title of the defendants Ada R. Erdmann and Harvey L. Erdmann to the lands and premises as set forth and described in their separate answers herein be declared good and valid as against any and all manner of demands and pretensions of the plaintiff, and that defendants' titles thereto be quieted. Defendants to have their costs.

WEBER, THURMAN, and FRICK, JJ., concur.

GIDEON, J.

I concur in the order reversing the judgment of the trial court. In my judgment it is clearly proven that, at the time deceased conveyed the real estate and transferred his personal property to his wife, he did so with the express understanding that his wife should take the personal property charged with a trust to give to the daughter, plaintiff in this action, such amount of that personal property as would equal in value one-third of his estate. The time of the execution of that trust was left to the discretion of the widow. It is as clearly established, in my judgment, that the real property was to become the property of the son and the widow free and clear of any claim on the part of the daughter. The reason why the deceased desired to give the real property to his wife and son free of any claim of plaintiff is apparent from the testimony quoted by the Chief Justice. The mother, in the signed statement of August 7th, recognized her relationship to the property which she had received from her husband.

The court was in error in adjudging the plaintiff to have a lien upon the real property for the amount found due

plaintiff. It was in error in giving judgment against defendants for the amounts representing the plaintiff's part of her father's estate. What the court should have done, in my opinion, was to have made findings and entered judgment that the mother holds the personal property, or at least sufficient to equal in value one-third of the estate, in trust for the daughter, such trust to be executed at such time as the mother might deem advisable for the best interests of her daughter. It is apparent, and there can be no question as to that fact, that the father desired his daughter to have an equal share of the estate. The mother knew that when she received the conveyance. She accepted the conveyance of the real estate and the transfer of the personal property with such knowledge and understanding. The judgment of the court now makes it possible for the mother to defeat the desires of the father either by disposing of the property in her lifetime, or by will, or by failure to make a will.