FRED REITZ, APPELLEE, V. EARL R. PETERSEN ET AL., APPELLEES: FLORA KRUGER, ADMINISTRATRIX, ET AL., APPELLANTS.

FILED NOVEMBER 20, 1936. No. 29758.

*Kelsey & Kelsey* and *Jackson & Rice,* for appellants.

*Moyer & Moyer, R. J. Shurtleff* and *Hutton & Mueting, contra.*

Heard before GOSS, C. J., GOOD, EBERLY and CARTER, JJ., and MUNDAY, District Judge.

GOSS, C. J.

This is a controversy over the priority of mortgage liens on a quarter section of land. One of the defendants appeals

because her mortgage was awarded second place instead of first.

This suit was begun January 27, 1934, against Petersen and wife, the mortgagors, and against Flora Kruger, as administratrix of the estate of Emma L. Mueller, who had died. Plaintiff alleged that his lien was first and that of Emma L. Mueller, represented by defendant Kruger, was second. Plaintiff alleges estoppel against the Mueller mortgage. He alleges that Earl R. Petersen, the mortgagor, owning the south 100 acres of the quarter section, and desiring to purchase the north 60 acres from a third party, approached Mrs. Mueller, informed her of his situation and that it would be necessary for him to borrow enough to pay her off and $6,000 additional; that she said she had no place or investment in mind to use it, that the quarter section would be ample security for the whole sum of $13,000, that she would be willing to release her $7,000 mortgage and allow Petersen to borrow from some one $6,000 on a first mortgage on the entire quarter section, and that she would accept a new mortgage of $7,000 to be expressly inferior and subsequent to the lien of a $6,000 loan to be obtained by Petersen. Whereupon Petersen, relying upon said agreement, made application to plaintiff for a loan of $6,000, representing to plaintiff that it would be secured by a first lien and that the $7,000 mortgage on the south 100 acres would be released by Mrs. Mueller; that when the transaction was consummated on March 1, 1930, the $7,000 new mortgage, drawn by the officers or employees of a bank, through inadvertence and mistake, did not expressly recite that it was inferior and subsequent to the $6,000 mortgage; that an officer or employee of said bank delivered the original $7,000 mortgage and a release thereof to Petersen with full knowledge that Petersen would exhibit said papers for the purpose of procuring a first mortgage loan from some person, and probably plaintiff, on the quarter section.

The administratrix sets up Mrs. Mueller's mortgage, traverses the allegations of the petition, alleges that on March 1, 1930, that mortgage purported to be a first mortgage, and

alleges that Petersen and wife are incompetent to deny that the Mueller mortgage is first. She further alleges that plaintiff or his agents acting for him discovered prior to March 5, 1930, that the Mueller mortgage was on record in the office of the register of deeds prior to plaintiff's mortgage and by some means unknown to this defendant they caused the record to be changed so as to allow plaintiff's mortgage to be filed first. Defendant Kruger further alleges that the taking of the note and mortgage by Mrs. Mueller on March 1, 1930, constituted merely an extension for the term of two years of the debt due her from Petersen; that this defendant is entitled in equity to a lien upon the south 100 acres by virtue of the original mortgage and is entitled to a lien upon the north 60 acres by virtue of the mortgage of March 1, 1930.

The answers of Petersen and wife to the petition and cross-petition are general denials. Plaintiff filed a reply to the answer of the administratrix. It is chiefly an amplification of the allegations of the petition as to the issues of priority.

Prior to March 1, 1930, defendant Earl R. Petersen owned the south 100 acres of the quarter section involved and Mrs. Emma L. Mueller, of whose estate defendant Kruger is administratrix, held a $7,000 mortgage lien on that 100 acres. This mortgage was dated February 26, 1918, and was due March 1, 1933. It was released March 1, 1930. The release was recorded March 6, 1930, at 11 a. m. On March 1, 1930, the north 60 acres of the quarter section was deeded to Petersen; that same day Petersen and wife made and delivered to Mrs. Mueller their mortgage on the entire quarter to secure loan of $7,000, and made and delivered to Reitz, plaintiff, their mortgage on the entire quarter section to secure a loan of $6,000. The $7,000 Mueller mortgage was actually filed for record in the office of the register of deeds of Madison county, Nebraska, on March 3, 1930, at 9 a. m., and the $6,000 Reitz mortgage was actually filed for record in the office of the register of deeds of Madison county, Nebraska, on March 6, 1930, at 9 a. m.

The note made by Petersen and wife to Mrs. Mueller for $7,000 on March 1, 1930, specifically states, and the statement is partly typewritten, as follows: "This note is secured by first mortgage on the SW¼ sec. 9, town 23, range 4, in Madison county, Nebraska." The $6,000 Petersen note to Reitz does not purport to be secured by a first mortgage on the land. That note contains the following: "This note is secured by mortgage on the SW¼ sec. 9, twp. 23, r. 4, west, in Madison county, Nebraska."

The Mueller mortgage was actually filed before plaintiff's mortgage. Neither mortgage contains any recital as to their priority. These facts of record, considered alone, would make the Mueller mortgage a first lien on the quarter section. We must look to the other evidence to find justification for the judgment of the trial court giving plaintiff's mortgage priority.

E. H. Shumacher, 39, had been connected with the First National Bank of Tilden for 16 years and had been its cashier for six or seven years. He had known Mrs. Mueller about 10 years. She had a checking account, was a stockholder, and had a safe deposit box in the bank where she kept her papers and occasionally advised with the witness as to her business affairs. Probably not over 30 days prior to March 1, 1930, Mrs. Mueller called the bank on the telephone and asked that the witness stop at her house, which he did when he went to dinner. We quote his exact language, when asked to give their conversation: "Mrs. Mueller said to me that Earl Petersen had called at her home and informed her he was buying sixty acres of land adjoining the one hundred acres that he already owned, the one hundred acres being covered by this $7,000 first mortgage, and that Mr. Petersen had asked her if she could furnish him with $6,000 additional funds as the purchase of this additional sixty acres involved about that amount; and that she had told Mr. Petersen that she didn't have the $6,000. Then Mr. Petersen asked her if she would accept the payment of the $7,000 mortgage and that she said she would rather not. Then Mr. Petersen asked her if she would take a second mortgage

subject to $6,000 on the entire one hundred and sixty acres, on the hundred acres that he already owned and the sixty acres that he was buying. Mrs. Mueller asked my advice concerning this transaction. I told her I would not consider doing that if I were her. Then she told me she had already informed Mr. Petersen she would make this kind of a deal with him. Of course, there was nothing further for me to advise her since she had already agreed to make the transaction. That was about all of the conversation."

The witness further testified that the $7,000 mortgage of Earl R. Petersen and his wife, Olive A. Petersen, to Emma L. Mueller, dated March 1, 1930, was drawn up in his bank and their signatures were witnessed by him and he took their acknowledgment as a notary public in the bank on that day; that on the same day he witnessed the signature of Emma L. Mueller to her release of the 1918 mortgage for $7,000 on the 100 acres, which also was drawn in the bank on the same day and acknowledged before him as a notary public; that the original, or 1918, note and mortgage of the Petersens to Mrs. Mueller were stamped as paid by the bank's perforating stamp on the same day; that after the Petersen $7,000 mortgage to Mrs. Mueller was executed it was sent by the First National Bank to the register of deeds for record.

The trial court held plaintiff's witnesses rather strictly to the rule that oral testimony could not be received from any witness having a direct legal interest as to any transactions or conversations with Mrs. Mueller. Comp. St. 1929, sec. 20-1202. As we try the case *de novo* here, we exclude all such testimony in instances where to consider it would violate that rule.

On March 1, 1930, after the Mueller mortgage was sent to the register of deeds with no instructions, Shumacher wrote a letter to the register about that instrument, but he was not permitted to go further in his testimony than to identify his signature. However, Rose K. Brogan, the register of deeds, who was called by defendant Kruger as a witness, testified that she had received in the 9 o'clock morning

mail on March 3, 1930, the Mueller mortgage and had filed it as of 9 a. m. that day. Then in the next mail of the same day she received a letter, which is in the record, from E. H. Shumacher, cashier of the First National Bank of Tilden, dated March 1, 1930, telling the register of deeds that "Today we sent you for record a mortgage of $7,000, Earl R. Petersen to Emma L. Mueller. You will also receive for record, probably from the Tilden National Bank, a mortgage from Mr. Petersen to another party covering the same land. Please record the $6,000 mortgage first as the mortgage we sent you is intended as a second mortgage." Not having then received the $6,000 mortgage, Mrs. Brogan testified she called the Tilden National Bank and asked them if it was true that the Mueller mortgage she had was to be a second mortgage and if they had a $6,000 mortgage which was to be a first mortgage. They said it was true, that the $6,000 mortgage was in the mail and if she would call Moyer & Moyer they perhaps would have it by that time. She then called Earl Moyer. As a result of the information she obtained through the Shumacher letter, of the information she obtained from the Tilden National Bank, and of the information she obtained from Moyer, she changed the filing date of the Mueller mortgage so as to show the Reitz mortgage to be first, when it was actually received for filing on March 6, 1930, and the Mueller mortgage to be second, also as of March 6, 1930. Of course, she was not authorized to make this change and it was ineffective, of itself, to fix the priority of the mortgages.

Section 76-217, Comp. St. 1929, requires such instruments to be considered recorded as of the time when delivered to the register of deeds for that purpose. *Judkins-Davies v. Skochdopole,* 122 Neb. 374, 240 N. W. 510, is authority for a rule that the mere fact that a mortgage was first received for record by the register of deeds under section 76-217, Comp. St. 1929, does not prevent a mortgage received for record later being awarded priority when shown by competent evidence to have been intended by all

parties in interest to be prior. Along with other evidence, oral evidence of intent of the parties was considered in deciding the priority.

In the case at bar the intent of Mrs. Mueller is shown a short time before the deal was closed to have been to take a second mortgage on the quarter section in place of her then existing mortgage on 100 acres. She must have known and realized that her decision to do this would take a few weeks for Petersen to act upon and to bring it to completion. When she consulted Shumacher as her banker and he advised against it, she was resolute and decisive about it. She announced to him that she had agreed with Petersen to do it and intended to make the change in her security. When the time came to close the transaction she was present and did her part. It was no fault of her's nor of Petersen that the contract was not so stated that, after she was dead, there would be no power to defeat the record made by them in their written instruments. That was the fault of inept conveyancing. This, however, was worth all it cost, which, according to the record, was evidently nothing. At least plaintiff testified that no charge was made him.

Intent is a fact. "A fact, relation or state of things once shown to exist may be presumed to continue until the contrary appears." *Lincoln Joint Stock Land Bank v. Bexten,* 125 Neb. 310, 250 N. W. 84. That, of course, is a general statement. When applied to a fact or oral agreement of parties, such as is involved here, it probably should be restricted to this—that such a fact or agreement is presumed to continue at least for the ordinary time it would take to carry it into effect. See 9 Ency. of Evidence, 906 *et seq.* The evidence of the agreement here produced through Shumacher, a competent witness, shows that Mrs. Mueller, by her own admission, had agreed with Petersen that she would subordinate her mortgage to a first mortgage to be secured by him elsewhere. She was a woman of character and was resolute in her adherence to her promise. When the time came to carry it out she cooperated with Petersen in doing so. As far as either of them knew, the agreement

had been fully performed. That it was not efficiently done was not their fault but an oversight of the agencies they employed. She delivered all papers executed or held by her and he did likewise. She took her new mortgage and held it to the date of her death in the belief that she had done exactly as she had promised and that Petersen had done the same. In such a case it may well be said that the fact, the relation of the parties, the state of things proved through Shumacher's evidence, continued to exist. That presumption has not been overcome by evidence. This bound her in her lifetime and binds her administratrix.

The conclusion we have reached makes it unnecessary to decide any other point raised by the parties. The judgment of the district court is

AFFIRMED.