# HANSEN v. HANSEN.

No. 6912. Decided August 9, 1946. (171 P. 2d 392.)

See 65 C. J., Trust, sec. 46; 54 Am. Jur., 46.

*Joseph E. Evans,* of Ogden, and *Leon Fonnesbeck,* of Logan, for appellant.

*Young & Bullen,* of Logan, for respondent.

McDONOUGH, Justice.

Mrs. Emma J. Mortensen, mother of plaintiff and defendant, died in April, 1944. She was nearly 90 years old. Shortly after her death, plaintiff requested defendant to sign a quitclaim deed as an attempt to remedy a misdescription of property in a warranty deed executed by the mother on May 19, 1932, whereby the property theretofore owned by the mother was ostensibly conveyed to the plaintiff with a reservation to the mother of a life-estate and all of the rents, issues and profits to her during her lifetime. Defendant refused to execute any deed, and plaintiff brought this action to reform the description contained in the warranty deed, alleging that it was intended to describe in the deed the particular property described in the complaint.

By answer defendant admitted that the property described in the complaint was the property intended to be described in the deed. He did not resist reformation, but by counter-claim he alleged that notwithstanding the deed was in the form of an absolute conveyance subject to a life-estate, it was given by the mother and accepted by the plaintiff in trust for the equal use and benefit of plaintiff and defendant; that it was executed without any consideration being paid by plaintiff, and that it was given to avoid probate expenses; that plaintiff collected the rents, issues and profits, and failed to account for the share of defendant. The defendant prayed that the property be impressed with a trust for the equal use and benefit of plaintiff and defendant, and that plaintiff be ordered to account for defendant's share of the rents, issues and profits in excess of taxes and other expenses.

Defendant testified only by deposition taken out of the state. The plaintiff was called as a witness for defendant as well as in his own behalf. The court decreed reformation

of the deed, and also decreed that defendant has no right, title, equity or interest in the land. From the latter part of the decree defendant appeals. He seeks reversal of that part of the decree on the following grounds: (1) That the court required him to go forward with evidence and prove his counterclaim, without first requiring plaintiff to produce proof. (2) That certain testimony in his deposition was improperly excluded, and that his counsel were denied the privilege of asking plaintiff leading questions. (3) That the court's finding that the mother of the parties intended to convey the fee simple title to plaintiff, subject only to a reservation to herself of a life-estate, is not supported by the evidence. (4) That the decree whereby the court adjudges that defendant has no title nor interest in the property, is contrary to the law and to the evidence. We shall consider these propositions in the order set forth.

Inasmuch as defendant admitted that the property was erroneously described and he consented to reformation of the deed, the only issues in the case were those raised by the counterclaim and controverted by the reply. ■ On those issues defendant was the complaining party, and he had the burden of going forward with competent proof of the material averments of his counterclaim. The court did not err in so ruling.

Appellant complains that some of the evidence which would tend to show that the deed was actually given in trust and given without consideration moving from plaintiff, was excluded. We find no merit to his contention in this respect. The defendant testified by deposition. Certain answers to questions involved surmise, hearsay, ■■ and conclusions. The court did not err in not receiving them in evidence. Indeed, the court could not base any finding on such answers without indulging in speculation. The fact that the case was one in equity and required that the court

"hear all of the facts as claimed by each party in order to decide where the equity lies,"

■

as stated by appellant's counsel, is no basis for the admission of incompetent evidence. The court excluded no evidence dealing with the facts, circumstances and conditions which might have a bearing on the nature of the conveyance. Nor do we think that the trial court unduly restricted counsel in the examination of plaintiff whom appellant called as a witness. True, he was an adverse witness, but leading questions were permitted, though objections to some argumentative ones were sustained.

Appellant attacks the court's findings that the mother intended to convey a fee simple title, subject only to a reservation to herself as a life-estate. He contends that the evidence shows the contrary, and that the conveyance was intended to be in trust. Where a trust in land is sought to be established by parol, the proof must be clear and convincing, as declared by this court in *Chambers* v. *Emery,* 13 Utah 374, 392, 45 P. 192, 195:

"* * * Likewise, where one who claims to have furnished a moiety of the purchase price seeks to convert the purchaser into a trustee *pro tanto,* and where, as in this case, the testimony relied upon to establish such a trust is oral, a preponderance thereof is not sufficient. In such event the proof must be strong, clear, and convincing, such as to leave no doubt of the existence of the trust. Such a case is similar to one where it is attempted to convert a deed absolute into a mortgage, or where the reformation of a written instrument is sought on the ground of accident, mistake, or fraud. In all such cases the court will scrutinize parol evidence with great caution, and the plaintiff must fail unless it is clear, definite, unequivocal, and conclusive. Public policy, and the safety and security of titles to real estate, demand this rule, because such evidence is offered to overcome the strong presumption arising from the terms and conditions of an instrument in writing, which is always the best evidence of title. If it were once established that the effect of the terms of a written instrument could be avoided by a bare preponderance of parol evidence, the gates to perjury would soon be wide open, and no person could longer rest in the security of his title to property, however solemn might be the instrument on which it was founded. '* * * To make such an effort successful, the law, for the safety of titles, requires that the proof shall be of the most convincing and satisfactory kind. Nothing short of certain, definite, reliable, and convincing proof will justify the court in divesting one man of title to lands, evidenced by a

regular deed, and putting it in another.' *Midmer* v. *Midmer's Ex'rs*, 26 N. J. Eq. 299."

None of the authorities cited by appellant on the admissibility of parol evidence to explain the real character of a transaction, dispense with the criterion established in *Chambers* v. *Emery*, supra, for testing the sufficiency of parol evidence. Does the record in this case, measured by such test, require a finding that the deed dated May 19, 1932, was given to plaintiff in trust? The only written evidence relied on by the defendant consisted of the mortgage executed the same day as the warranty deed. The balance of his case rests on parol evidence, but he argues that the entire fact picture and the situations and implications arising therefrom, require the court to impress the property with a trust.

The facts may be summarized as follows: Between 1919 and 1927 defendant gave financial assistance to his mother, although his testimony does not show that it was done other than gratuitously. In 1927 he left the state, and thereafter he visited his mother infrequently, due in part to his own illness. There is no evidence that either son gave any financial assistance to the mother after 1927, except such assistance which might be implied from the fact that she lived at the home of the plaintiff for a number of years prior to her death. However, sometime after 1927 the mother received old age assistance from the state in the amount of $21.00 per month, which continued after the mother went to live at the home of plaintiff after 1934. In 1926 she stated to both sons, according to the testimony of defendant, that she intended to deed her property to one of her sons to save probate expenses, and that she wanted her two sons to share the property equally. She was then 72 years of age. This property went to tax deed, and there was some danger that the mother would lose it unless the tax delinquency was paid before the May sale in 1932. On May 19, 1932, the mother deeded the property to plaintiff, reserving to herself a life-estate with the rents, issues and profits. She was then 78. On the same day, she and plaintiff executed a mortgage to

raise the money to pay for redemption of the property from the tax sale. Plaintiff paid the taxes thereafter, and he repaid the mortgage indebtedness. There is no competent evidence that he received the rents, issues or profits. The mother made no disclosure to defendant as to what she had done. However, as she advanced in years she became almost totally blind, and required care and attention. Nothing was said about this transaction until the plaintiff discovered that there was a misdescription of the property in the deed and requested a quitclaim deed from defendant.

Appellant contends that in view of his generosity between 1919 and 1927 and the lack of proof that plaintiff contributed to the mother's support in any substantial way, the deed would operate to disinherit appellant if not impressed with a trust, and that such result would have been unnatural and unlikely, and also contrary to her expressed intention in 1926. He argues that the mother was supported by old age assistance, that in view of her increasing helplessness she was unable to manage her property, and that plaintiff undoubtedly collected the rents. By the terms of the warranty deed she expressly reserved to herself all of the rents, issues and profits during her lifetime. Even if plaintiff collected them, such fact would not create an inference that he failed to remit the same to his mother. Evidence which does nothing more than to create suspicion, does not sufficiently establish misuse or misappropriation of funds. The argument that plaintiff could have testified with respect to the 1932 transaction and concerning the disposition of rents subsequently collected, does not aid the position of defendant. On his counterclaim he was the complaining party, and he had the burden of going forward with competent evidence to show the actual existence of a trust, before plaintiff could be required to negative such evidence. At the trial, plaintiff was not fully interrogated as to the transaction.

Appellant insists that there was no adequate consideration for the deed because the property was used as security for the mortgage loan to redeem the property from tax liens.

True, up to the time of the delivery of the deed, plaintiff had no interest in the property. There was some consideration for the deed, for plaintiff signed the mortgage and became liable for its payment, and according to the evidence he did furnish the money to extinguish the mortgage debt. It was entirely business-like for the money lender to require the mother to join in the mortgage for the reason that she had reserved to herself a life-estate.

While there was some effort to show a possible resulting trust in favor of the mother, on the theory that the conveyance to plaintiff was made to enable him to consummate a loan to save the property, there was no claim asserted that there was any trust other than an express trust for the use and benefit of the two sons in accordance with the declaration made by the mother in 1926. The defendant built his case upon the theory that in 1926 the mother declared her intention to give a deed to one of her sons to avoid probate, and that she wanted her two sons to share equally. and that *pursuant* to said declared intention, she gave the deed to plaintiff with a reservation to herself of a life-estate, *six years later*.

Appellant relies heavily on the mother's statement of intention made in 1926, and he assumes that the mother made up her mind with such finality that it would not likely be changed. Such an expressed intention could have been promptly carried into effect, or at least within a reasonable period of time. Appellant takes the position that proof of the mother's intention in 1926 is like proof of any other "state of facts" and that a state of mind and of intention is a "state of facts"; that having once proved an intention to give one of her sons a deed to the property for their mutual use and benefit, such an intention would be presumed to continue until the contrary were shown; and therefore, that the deed given six years later to plaintiff must be presumed to have been given to carry into effect such an intention expressed in 1926.

The period of time during which a particular state of facts once proved to exist may be presumed to continue, must

necessarily depend upon the nature of the particular state of fact and the situation involved. We pointed out in *Jensen* v. *Logan City*, 89 Utah 347, 366-369, 57 P. 2d 708, that where a situation has inherent in it the likelihood of change, proof of the state of fact must be fairly near the time of the event in issue, to warrant an inference of continuity. In *Scott* v. *Wood*, 81 Cal. 398, 22 P. 871, it was held that a state of facts once proved to exist is presumed to continue only "as long as is usual with things of that nature." In *Reitz* v. *Petersen*, 131 Neb. 706, 269 N. W. 811, 814, the court said.

"Intent is a fact. 'A fact, relation, or state of things once shown to exist may be presumed to continue until the contrary appears.' * * * That, of course, is a general statement. When applied to a fact or oral agreement of parties, such as is involved here, it probably should be restricted to this—that such a fact or agreement is presumed to continue at least for the ordinary time it would take to carry it into effect."

We cannot presume that Mrs. Mortensen continued to retain the expressed intention testified to for a period of six years, and solely on such premise arrive at the conclusion that when the deed was signed in 1932 at a time when she was about to lose her property, such conveyance was made to carry out the intention expressed in 1926. When economic conditions and circumstances which affect life change, people also frequently change their plans and intentions accordingly.

All that occurred in 1926 was the expression of an intention to do something—the manifestation of a state of mind. The failure to carry such an intention into effect within a reasonable time might well be construed in some situations as either an abandonment of such intention or a substantial alteration of purpose, for the reason that if an intention were definite and inflexible, something would normally be done about it to put it into effect if within the power of the person to do so, without untoward delay. Mrs. Mortensen's expressed intention in 1926 did not require

either plaintiff or defendant to do something as a condition precedent to execution of such intention. On none of his inferquent visits did defendant ever think to say something to his mother about making out a deed, although he doubtless realized that she was becoming more aged and dependent.

The mere expression of an intention is insufficient to create a trust, for the simple reason that a person may change his mind without executing such intention. While intent is essential to establish a trust, mere intent alone will not accomplish any such result. As pointed out in *Skeen* v. *Marriott*, 22 Utah 73, 89, 61 P. 296, 300:

"* * * nor are declarations of a purpose to create a trust, or mere voluntary promises to give property to a person or persons, or to dispose of it in the future for the benefit of such person or persons, when such promises remain unfulfilled, sufficient to create a trust, or any right which a court of equity will enforce. Nor is a mere intention or mere voluntary agreement to create a trust, where the owner of the property contemplates some further action by him to make it effectual, sufficient to establish a trust."

The court quotes from Beach on Trusts and Trustees, Sec. 52:

" 'In the creation of a trust in personalty, as well as in real estate, the language employed must be definite and positive. * * * In addition to this, the proof of the trust must be unequivocal. The declaration of a purpose to create a trust is of no value, and a promise to make a donation at some future time, where there is no consideration, at best is only an imperfect gift, and will not be upheld as a trust.' "

Counsel for appellant attempt to show execution of the intention by the giving of the deed in 1932. In arguing that such deed was merely given to carry out the intention expressed six years previously, they point out that in the absence of a will or deed, the plaintiff and ██ defendant would have shared the property equally as heirs at law, subject to expenses of probate which they

say Mrs. Mortensen seemed to be anxious to avoid. They overlook the fact that she not only had a right to change her mind, but that after defendant left the state there was a serious change in economic conditions, the pattern of which required her to act in such a manner as to save her home for the remainder of her life. The fact picture does not show the establishment of a trust, since it does not show that the deed in 1932 was given pursuant to the declaration of intention made in 1926.

What we have said heretofore, disposes of the final proposition asserted by appellant, that the decree adjudging defendant to have no right, title, equity or interest in the property, is contrary to law and the evidence. In *Jensen* v. *Howell*, 75 Utah 64, 282 P. 1034, the father conveyed real estate and transferred stocks and bonds to the stepmother by instruments absolute on their face. At the time of such delivery, the father stated that he wanted his wife (the stepmother) to have the property "until she is done with it" and then to divide it equally among the children, the children of the first wife to have their share. The trial court sustained the contention that the deeds were impressed with a trust, and on appeal we reversed the decree, holding that the evidence was insufficient to establish any trust in the lands.

In *Jeppson* v. *Erdman*, 60 Utah 543, 209 P. 203, before signing deeds to his wife, the husband expressed the wish that his daughters receive a portion of the personal property. The wife as grantee was induced by the son-in-law to sign a paper which recited that the daughter was the owner of a "one-third interest under the wish" of her father. The trial court held that there was a trust and declared a lien upon the property for the amount computed as the beneficial interest of the daughter. We reversed the decree, and held that the expression of a hope or desire that the mother would make some provision for the daughter out of the properties, did not create any trust, since the grantee did not expressly nor impliedly promise to hold the property in trust. We ordered title quieted in the defendant.

In this case, inasmuch as defendant assailed the title of plaintiff by counterclaim seeking to impress the property with a trust, the record title to which stood in the name of plaintiff, the court properly adjudged defendant to have no right, title or interest in the property in controversy.

The decree of the district court is therefore affirmed, with costs to respondent.

LARSON, C. J., and PRATT, WADE, and WOLFE, JJ., concur.