NATHAN FINEGOLD, APPELLANT, V. UNION OUTFITTING COMPANY ET AL., APPELLEES.

FILED APRIL 21, 1923. No. 22267.

1. **Property:** OWNERSHIP: PRESUMPTION. The presumption of the continuance of facts once shown to exist may, in a proper case, be applied in respect of the ownership or possession of property.

2. **Pleading:** ESTOPPEL. When a party alleges a material fact, in a pleading upon which he relies, he cannot afterward be heard to deny the existence of such fact.

3. **Property:** OWNERSHIP: PRESUMPTION. Possession of a vehicle which by negligent management has caused injury to the person or to the property of another warrants an inference of ownership, and, *prima facie* ownership having been found once to exist, the general rule is that it is presumed to continue until a change in ownership is affirmatively shown by the defendant.

4. **Master and Servant:** AGENCY: BURDEN OF PROOF. The presumption of the use and control of a motor propelled vehicle, which arises from proof of ownership, which by its negligent operation has inflicted damage upon the person or property of another, is not conclusive, but such facts place the burden upon the owner to show that the driver was not his agent nor in his employ.

5. **Evidence:** ADMISSIONS: ADMISSIBILITY. In a personal injury action the court may, in the exercise of sound judicial discretion, admit evidence of a conversation offered by plaintiff to show an admission by defendant's credit manager, since deceased, who was in charge of defendant's office, that an employee of defendant was sent by him on an errand, it being alleged that while in performance of the errand the employee inflicted the injuries complained of by colliding with plaintiff while such employee was operating a motorcycle.

6. ———: INFERENCES. "In a civil action, when a fact may be fairly and reasonably inferred from other and all the facts and cir-

cumstances proved, it may be taken as established." *Chicago, B. & Q. R. Co. v. Hildebrand,* 42 Neb. 33.

7. **Trial:** DISMISSAL: REVIEW. The evidence examined, and *held* that the court erred in sustaining defendant's motion to dismiss plaintiff's action.

APPEAL from the district court for Douglas county: JAMES FITZGERALD, JUDGE. *Reversed.*

*R. J. Craren* and *Richard S. Horton,* for appellant.

*Lambert, Shotwell & Shotwell* and *Kennedy, Holland, DeLacy & McLaughlin,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and DEAN, JJ., RAPER, District Judge.

DEAN, J.

Plaintiff sued in Douglas county to recover damages from the Union Outfitting Company, a corporation, and William Bell, its alleged employee, defendants, in the sum of $50,000 for personal injuries sustained by plaintiff in Omaha, June 23, 1919, by being run over by a motorcycle, the alleged property of defendant company, which was propelled by its codefendant William Bell while in the performance, as alleged, of certain duties delegated to him by the company. When plaintiff rested both defendants moved separately for a directed verdict on the ground that the evidence was not sufficient to sustain a cause of action. Both motions were sustained, the jury were discharged, the suits were dismissed as to both defendants at plaintiff's costs, and he appealed.

Plaintiff alleged that he had just alighted from a street car when the collision occurred. In substance he testified that he was 36 years of age, by occupation a merchant tailor, and that his income averaged about $600 a month. In respect of the facts immediately attending the accident he testified in part:

"My hip was knocked out, what they call the—I don't know what they call it; the hip was knocked out in front there, and my head was split here. My nose was knocked over, I was all bruised up, and it was gone out

here.  My nose was very split here; and my head was split in two places; and then I was paralyzed about over nine months.  I can't hear, I can't do anything.  I was laying all summer six or eight, not being able to move to make one step, not even on crutches to walk.  I know my head gets dizzy; * * * when I bend, or anything, I can fall in the street without knowing anything, right now.  I say I got numbness that was there.  I can't do anything when I bend at all, I am liable to fall and not know anything."

Plaintiff's evidence with respect to his injuries was in large part corroborated by his physician who testified that his patient sustained "a dislocation of the left hip; a crushing fracture in the fourth lumbar vertebra;" that he was partially paralyzed and that his spinal injury was permanent; that he treated him seven or eight months, and that at the time of the trial he was unable to do any work.  In consequence of his injuries plaintiff was confined in a hospital for a considerable period and was in a plaster cast more than four months.  The nature of the injuries are in part outlined here merely to show that the questions of fact disclosed by the record are properly for the consideration of the jury.

The contention in part is that, because of the absence of a safety zone at the place of the accident, the rider of the motorcycle violated a city ordinance in failing to stop while the street car was discharging passengers, it being stipulated that a city ordinance of Omaha so provided.  The stipulation follows: "'Mr. Horton: It is admitted by the parties hereto that under the ordinances of the city of Omaha, Douglas county, Nebraska, it is provided that all motor vehicles, including motorcycles, should stop when street cars are loading or unloading. When safety zones are established, they should pass only with utmost caution, and at a speed of not to exceed 12 miles per hour.  Mr. DeLacy: I understand that is the ordinance; that is, they don't have to stop at safety zones; in the case of safety zones, they do not have to stop.

Mr. Horton: This is outside of safety zones. Mr. Shotwell: Yes. Mr. Horton: There were no safety zones. Mr. DeLacy: No; there weren't any safety zones in 1919. Mr. Horton: Let us admit that there was no safety zone at the intersection of Sixteenth and Webster at the time of the accident. There was a safety zone so far as you are concerned, but not as far as Mr. DeLacy is concerned. Mr. Shotwell: I do not want to make admission that there was not, if it is a fact that there was there; that is the only question. You are asking us to put in zones; and, if there is no safety zone, that is all, as far as that is concerned."

It is argued by the company that there is no proof that the motorcycle was its property or under its control at the time. With respect to ownership the following colloquy took place between the respective counsel for plaintiff and the outfitting company: "Mr. Horton: Do you admit that the Union Outfitting Company, on the 6th day of January, 1919, had a license number 3937 on a motorcycle owned by them? Mr. DeLacy: I will admit that, up to January 15, 1919, they owned a motorcycle, and it was duly registered; and I looked up the register the other day, and I do not remember what the number was; if you have the number there. Mr. Horton: Subject to correction, then, you admit that the license number taken out on the 6th day of January, 1919, was No. 3937, on the car owned by you at the time the license was taken out? Mr. DeLacy: Yes." Besides the foregoing there is evidence tending to prove that license number 3937 was at the time on the motorcycle which ran over plaintiff.

The facts before us seem to make out a case of *prima facie* ownership sufficient to submit to the jury and which could be overcome only by direct proof to the contrary. The presumption of the continuance of facts once shown to exist may, in a proper case, be applied in respect of the ownership or possession of property. 16 Cyc. 1053. Possession of a vehicle which by negligent management has caused injury to the person or to the property of another

warrants an inference of ownership and, ownership having been found once to exist, the general rule is that it is presumed to continue until a change in ownership is affirmatively shown by the defendant. *Carr v. King & Tomlinson*, 184 Ia. 734; *O'Malley v. Heman Construction Co.*, 255 Mo. 386. To substantially the same effect are the following: *Hatter v. Dodge Bros.* 202 Mich. 97; *Dennery v. Great Atlantic & Pacific Tea Co.*, 82 N. J. Law, 517; *Edgeworth v. Wood*, 58 N. J. Law, 463. The presumption is not of course conclusive, but such facts place the burden upon the owner to show that the driver was not his agent nor in his employ. *Norris v. Kohler*, 41 N. Y. 42; *Joyce v. Capel*, 34 Eng. C. L. Rep. 785; *Ferris v. Sterling*, 214 N. Y. 249; *Baker v. Maseeh*, 20 Ariz. 201; *Williams v. Ludwig Floral Co.*, 252 Pa. St. 141; *Knust v. Bullock*, 59 Wash. 141.

In the briefs of both defendants it is argued that there is no evidence which identifies Bell as the rider of the motorcycle. But in the answer of the Union Outfitting Company it is alleged that "William Bell was riding on said motorcycle * * * for his own convenience and pleasure and * * * that at the time of said accident the said William Bell was not acting as its agent, servant or employee." From this, and the proofs as well, the question of the identity of the rider of the motorcycle seems to have been sufficiently established so far at least as that question may affect the company. Whether Bell was the owner of the motorcycle or whether, as owner or otherwise, he was in the company's employ or under its direction at the time are questions of fact for the jury.

James Sullivan, a railroad employee, arrived at the scene of the accident just after it happened. He testified: "Q. Did you see Mr. Finegold there? A. Mr. Finegold was laying in the street. Q. Did you notice the defendant Bell here? A. They were carrying him in the drug store, taking him in the drug store, at Sixteenth and Webster. I don't know him to see him, now."

Clearly the witness was inquired of about Mr. Bell.    But because plaintiff was carried into the drug store and because there is no other evidence tending to show that Bell was carried into the drug store and because the witness added, "I don't know him to see him, now," defendants contend that the answer of the witness referred to plaintiff.    While Sullivan's evidence seems to be incomplete it is not improbable, in view of plaintiff's subsequent condition, that the collision was such that the rider of the motorcycle also needed assistance and that he was carried into the drug store as Sullivan testified. Anyhow it was not a question of law for the court, but was a question of fact for the jury, to be considered, with respect to its probative value, with all the evidence in the case.

It is elementary that evidence in respect of a material fact from which fair-minded persons might reach different conclusions, when the evidence is considered in its entirety, does not present a question of law for the court, but a question of fact for the jury, which should be submitted under appropriate instructions.

With respect to the alleged liability of the company plaintiff testified that soon after he went to the hospital a man called on him who introduced himself as Mr. Hall. A photograph was introduced in evidence, which is not in the record, which he identified as the same person who called on him.    Elsewhere in the record the photograph was identified as being that of Mr. Hall, and there is the evidence of an employee of the defendant company, a buyer and assistant manager of the store for 10 years, who testified that Mr. Hall, since deceased, was and for many years had been in charge of the office and was the credit manager of the company at the time.    When counsel asked plaintiff to relate the conversation between Mr. Hall and himself, which took place at the hospital, defendant's objection to the introduction of his evidence on that point was sustained.    Counsel then made this offer, which was denied:    "The plaintiff offers to prove that the

answer of the witness would be that Mr. Hall stated that he was very sorry the accident had occurred; that he had sent Mr. Bell out on an errand that morning; that, as soon as Mr. Finegold had recovered sufficiently to come down to the store, the matter would be satisfactorily settled; that any damage by virtue of the accident was covered by indemnity insurance, and he would see that an adustment was properly made."

Mrs. Harry Filmore, an acquaintance of plaintiff, testified that she was on the same street car on which plaintiff came down town the morning of the accident and that she saw him get off the car and saw the motorcycle run over him. She also identified Mr. Hall's photograph and said that she saw him at the hospital and heard a conversation about the accident between him and plaintiff. When asked to relate the conversation the defendant company's exception was sustained. Plaintiff then made this offer of proof: "The plaintiff offers to prove and states the answer of the witness would be that Mr. Hall stated that their company was insured against such accidents; that he was very sorry it had happened; that he had sent Mr. Bell out on an errand early in the morning of the day of the accident; and that, as soon as Mr. Finegold had recovered sufficiently, the damage occasioned by the accident would be satisfactorily settled, when he had sufficiently recovered, if he would call at the store; and that, while Mr. Bell was on the errand referred to, the accident complained of occurred." The offer of proof was denied.

We think it was an abuse of sound judicial discretion for the court to exclude that part of plaintiff's evidence which purports to show that Mr. Hall said he "had sent Mr. Bell out on an errand that morning," and also that part of Mrs. Filmore's evidence wherein she testified that she heard Mr. Hall say "that he had sent Mr. Bell out on an errand early in the morning of the day of the accident." The evidence should have been submitted to the jury, under an appropriate instruction, in connection

with the other facts in the case. Whether Mr. Hall had authority to bind the company by an admission of liability we cannot decide in the present state of the record.

It seems that the rule announced in *Chicago, B. & Q. R. Co. v. Hildebrand,* 42 Neb. 33, is applicable to the facts here: "In a civil action, when a fact may be fairly and reasonably inferred from other and all the facts and circumstances proved, it may be taken as established." We think the evidence is *prima facie* sufficient to take the case out of the rule announced in *Neff v. Brandeis,* 91 Neb. 11, and *Weber v. Thompson-Belden & Co.* 105 Neb. 606, cited by defendants. The court erred in directing a verdict for defendants. The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.