PEARL E. FRANK, TRUSTEE, APPELLEE, v. FRANK E. STEARNS, APPELLANT: LESLIE WINTER, APPELLEE.

FILED NOVEMBER 16, 1923. No. 22511.

1. **Bankruptcy: ACTION FOR CONVERSION: SUFFICIENCY OF PETITION.** A petition filed by the trustee in bankruptcy of W., seeking to obtain a judgment against S. for wrongfully converting a part of W's estate, alleged that W. had been adjudged a bankrupt; that plaintiff was the duly appointed and qualified trustee; that, at the time W. sold the property to S., W. was insolvent; and that S. knew that W. was insolvent; and that the sale was in violation of the bulk sales law of the state. *Held*, that the allegations of the petition were sufficient to state a cause of action, and were not vulnerable to an attack upon the ground that it was not alleged that the assets in the hands of the trustee were not sufficient to pay the debts.

2. **Limitation of Actions.** Where a petition is filed which states a cause of action before the statute of limitations has run, and thereafter, after the period of the statute of limitations, an amended petition is filed, amplifying the facts but alleging the same cause of action, the amended petition is not vulnerable to a plea that the cause of action is barred by the statute of limitations.

3. **Judgment: ACTION IN REPLEVIN: ALLEGATION AS TO CONVERSION SURPLUSAGE.** Where plaintiff in a replevin action, in addition to his claim for a return of the property, seeks to recover damages against the defendant for a conversion of a part of the

property before the suit was brought, the court may rightly treat the allegations for damages for conversion as surplusage, and the judgment of the court adjudging the rights of the parties to the goods sought to be replevied is not an adjudication of the claim for damages for the conversion.

4. **Bankruptcy: ACTION FOR CONVERSION: SUFFICIENCY OF EVIDENCE.** Evidence examined, and *held*, not sufficient to support the judgment rendered.

5. **Cases Distinguished:** The rule announced in *Depriest v. McKinstry*, 38 Neb. 194, and in *Singer Sewing Machine Co. v. Robertson*, 87 Neb. 542, distinguished.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. *Reversed.*

*Mothersead & York,* for appellant.

*Halligan, Beatty & Halligan* and *C. G. Perry, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, DAY and GOOD, JJ., REDICK and SHEPHERD, District Judges.

DAY, J.

Claiborne G. Perry, as trustee in bankruptcy of Noah E. Workman, brought this action against Frank E. Stearns and Leslie Winter, to recover the value of certain merchandise claimed to be the property of the bankrupt, and which it is alleged the defendants converted to their own use. A jury was waived and trial had to the court, resulting in a judgment in favor of the defendant Leslie Winter, and dismissing the action against him. As against defendant Stearns, the court found in favor of the plaintiff, and rendered judgment for $3,220.13. Defendant Stearns appeals.

It appears that in November, 1914, Workman owned and operated a hardware and furniture store in the town of Bayard, Nebraska. He also conducted an implement business, and bought and sold grain. In the latter part of November of that year, he sold the hardware and furniture stock to the defendant Stearns, who took possession of the stock and commenced to operate the store, selling merchandise to the trade, and replenishing the stock from time to

time.   At the time of the sale the inventory indicated the value of the stock to be approximately $7,650.   Stearns paid $1,600 in cash at the time of the transfer of the stock to him, and for the balance agreed to turn over certain mortgages to be thereafter agreed upon.   This part of the transaction was never consummated.   In March, 1915, Workman was adjudged a bankrupt, Perry was appointed receiver, and later the creditors elected Perry trustee in bankruptcy.   While acting as receiver, on March 31, 1915, Perry commenced an action in replevin against Stearns and Winter to obtain possession of the stock of hardware and furniture, based upon the theory that the stock belonged to the bankrupt estate, because the sale to Stearns was made in contravention of the bulk sales law.   Later Perry, as trustee, intervened alleging that, as trustee, he was entitled to the possession of the stock, and also alleging that the defendants Stearns and Winter, while wrongfully in possession of the stock, had sold merchandise therefrom to the amount and value of $3,246.50, and had converted the same to their own use.   The sheriff under the writ of replevin took possession of all the stock of merchandise in the possession of the defendants, including the fixtures, and such merchandise then in the store purchased by Stearns since he took possession of the stock.   Upon the trial of the replevin suit, the jury returned two verdicts, one finding that at the commencement of the action the plaintiff "was entitled to the possession of the certain stock of goods in dispute, to wit, the stock of goods purchased by defendant from Noah E. Workman."   The other verdict found in favor of the defendant Stearns, that "he was the owner of and entitled to the possession of all fixtures purchased by him from Noah E. Workman, being the fixtures in dispute in this action; and also that he was the owner of and entitled to the possession of all goods purchased by him after the purchase of said stock of goods in dispute from the said Noah E. Workman, and added to said stock, and we find his damages for the detention of said fixtures and said goods in the sum of $980.50."

On November 23, 1915, the court entered judgment based on the two verdicts. The judgment recited that the plaintiff have and recover of the defendant the possession of "the stock of goods purchased by the defendant from Noah E. Workman, and * * * that the defendant Frank E. Stearns was at the commencement of this action the owner of and entitled to the possession of all fixtures purchased by him from Noah E. Workman, being the fixtures in dispute in this action, and also that he was the owner of and entitled to the possession of all goods purchased by him after the purchase of said stock of goods in dispute from the said Noah E. Workman, and added to said stock, and that he recover from the plaintiff the sum of $980.50, his damages by reason of the premises."

Whatever may be said of the manner in which the replevin action was tried, no appeal was taken from the judgment.

In February, 1916, Perry commenced the present action to recover the value of the merchandise which had been sold during the period the stock was in possession of Stearns and Winter, but for unexplained reasons the action was not brought to trial until in February, 1921.

In January, 1920, Pearl E. Frank, trustee, was substituted as party plaintiff, and by leave of court filed an amended petition. A demurrer was filed to this petition upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and an answer filed.

It is first urged that the court erred in not sustaining the demurrer. It is argued that the petition fails to state a cause of action, because it is not alleged that the trustee in bankruptcy did not have in his hands sufficient assets to pay all the creditors of the bankrupt. It is undoubtedly true that the trustee in bankruptcy would have no standing to prosecute this action if in fact the assets in his hands were sufficient to pay the debts, and the petition should allege facts showing the right of the trustee to maintain the action. In some form it must appear that the assets are

insufficient to pay the debts.   The amended petition alleged that Workman was adjudged a bankrupt; that the plaintiff was the trustee in bankruptcy; that, at the time of the sale of the stock to Stearns, Workman was insolvent; and that at the time of the sale Stearns knew that Workman was insolvent.   The amended petition contained other averments not pertinent to the point now being considered.

Are the allegations of the petition equivalent to a charge that the trustee did not have sufficient assets in his hands to pay the debts of the bankrupt?   It may be conceded that in some instances an act of bankruptcy may exist, and the bankrupt still have assets sufficient to pay his debts.   So that we pass the allegation that Workman was duly adjudged a bankrupt.   But, it is charged that he was "insolvent."   What interpretation is to be given to this term in the light of the general allegation of the amended petition?   "Insolvency," as that term is ordinarily used, is not the same thing as a mere failure to pay debts, but, as applied to an individual or a corporation, it means an insufficient amount of property to pay debts.   In construing a petition the court will give the language used its ordinary and well-understood meaning.   If Workman was insolvent and the trustee had in his hands all of the assets of the bankrupt, he would still have insufficient funds to pay the debts.   We think, when fairly construed, the amended petition stated a cause of action, and that the court did not err in overruling the demurrer.

It is next urged by the defendant that the court erred in not holding that the cause of action was barred by the statute of limitations.   This contention is based upon the idea that a cause of action was stated for the first time in the amended petition.   As before stated, the original petition was filed in February, 1916.   The amended petition was filed in January, 1920.   The acts of conversion occurred prior to March 31, 1915.   We think, however, that the defendant is in error in the contention that a new cause of action is set up in the amended petition.   The gist of the cause of action in both petitions is the wrongful conversion

of the property by the defendants.   The amended petition is but an amplification of the facts.   No new or independent cause of action is set up.   The trial court was right in holding that the statute of limitations had not run against the cause of action.

It is next urged that the controversy between the parties had become *res judicata*.   This claim is based upon the theory that Perry, as trustee, in his petition of intervention in the replevin suit, prayed for the possession of the property described in the writ of replevin, and also for $3,500, the value of that portion of the stock wrongfully sold by the defendant.   It is claimed by the plaintiff that the portion of the petition of intervention which seeks to recover the value of the goods purchased by Stearns, and which had been sold by him before the replevin suit was instituted, was stricken from the petition of intervention.   There is a recital in the proceedings in the replevin action, "Motion to strike sustained," but there is nothing in the record to indicate to what motion this order relates.   In this state of the record, we are unable to say that the order sustaining the motion to strike referred to the intervener's petition.   But we think that the allegations of the petition of intervention, in so far as it sought to recover the value of the goods sold by Stearns during the time he was in possession of the stock, must be regarded as mere surplusage. The action was one in replevin, and it would not have been proper for the court in such an action to have determined the value of that portion of the stock which had been sold by Stearns prior to the institution of the action.

An action in replevin is primarily for possession, and must be brought against one having the custody or control of the property.   If such person has parted with its possession, the remedy must be against him in some other form of action.   In Cobbey, Replevin (2d ed.) sec. 64, it is said: "Replevin will not lie against one who is not detaining the property when the writ is sued out.   It is the condition of things when the suit is commenced which furnishes the ground for the action."   This principle has been approved

in *Heidiman-Benoist Saddlery Co. v. Schott,* 59 Neb. 20, and in *Burr v. McCallum,* 59 Neb. 326.

Under the doctrine announced in *Burr v. McCallum,* 59 Neb. 326, it would have been error for the trial court in the replevin action to have rendered judgment for the value of the goods which the defendant had sold prior to the institution of that action. In the replevin suit the trial court did not assume to pass upon the claim of the trustee in his petition of intervention for damages arising out of the sale of a part of the goods by defendant before the replevin action was instituted. The court evidently treated that part of the petition of intervention as surplusage, and was right in so doing. The matter of damages for the sale of the goods was not considered or determined. We think, therefore, that the plaintiff's contention that the matters now in issue have been adjudicated must fail.

It is finally urged that the award of damages is not sustained by the evidence. The action being one for the recovery of damages for the wrongful conversion of the goods, the plaintiff's measure of damages is the value of the goods at the time they were converted, with interest at the legal rate. Apparently this was the theory upon which the court acted. The books kept by the store were lost, so there was no way of determining from any record the character of the goods sold by the defendant while in his possession. Evidence was introduced, however, which fairly showed that the defendant had sold goods from the stock amounting to $3,246.50 a part of which was new goods purchased by him and commingled with the general stock.

The judgment of the trial court found that the amount of sales made during the time Stearns had possession was $3,246.50; that the amount of new goods sold, and included in the aggregate, was $479.76, leaving a balance of $2,766.74. There is a recital in the judgment indicating the manner in which the figures were arrived at. It is stated that in the replevin suit the defendant recovered from the trustee in bankruptcy, for goods taken belonging to the defendant, the sum of $433; that the new goods purchased

and added to the stock by the defendant amounted to
$912.76. The difference between these sums is $479.76.
There is nothing in the record, however, from which a con-
clusion can be drawn that the value of the new goods re-
covered in the replevin suit was $433. The judgment in
the replevin suit in favor of the defendant for the goods and
fixtures is $980.50. No attempt was made to apportion the
amount between the goods and the fixtures. Taking $2,-
766.74 as the value of the goods converted by Stearns,
the court found that the cost of selling the goods to the
retail trade was $1,000. This finding is supported by the
evidence. But the court found that the defendant at the
time he was conducting the store, was also engaged in buy-
ing and selling grain, which was no part of the store busi-
ness, and not connected with it in any way, and that one-
half of the expenses was properly chargeable to the selling
of the stock. The court then deducted $500 from the
$2,766.74, leaving a balance of $2,266.74, for which, with
interest, judgment was rendered in favor of the plaintiff,
the aggregate sum being $3,220.13. There is no testimony
in the record which seems to justify the apportionment of
the expenses of conducting the store and the grain busi-
ness in the manner adopted. In fact, there is no testimony
in the record upon this subject. We are inclined to believe
from the errors which appear in the record that the bill
of exceptions, although agreed to by the parties, does not
contain all the evidence or the admissions on the trial, as it
hardly seems probable that the court would have arbitrarily
fixed figures as heretofore indicated without testimony.

The rule of damages in cases of this character, where
goods are wrongfully taken and retained from the owner,
is that the owner is entitled to recover the value of the goods
so taken with legal interest from the date of the conversion.
This was the theory adopted by the trial court. Owing to
the fact that the books were lost, and the goods could not
be identified, the method of arriving at their value was
perhaps the only means available, and was the best proof
under all the circumstances.

We think, however, the record fails to support the judgment with respect to the two matters above discussed. An argument on behalf of defendant, and an array of figures based upon exhibit 7, is found in the brief, but the record shows the objection to this exhibit was sustained, and it is not properly in the record.

In this discussion we are not unmindful of the rule announced in *Depriest v. McKinstry,* 38 Neb. 194, and in *Singer Sewing Machine Co. v. Robertson,* 87 Neb. 542, in which, on first blush, a contrary view might seem to have been announced. In those cases, however, it appears that the property was disposed of by the defendants for the very purpose of avoiding the writ. It is pointed out in *Singer Sewing Machine Co. v. Robertson, supra,* that the common-law rule is correctly announced in *Heidiman-Benoist Saddlery Co. v. Schott, supra,* but that the facts in the *Singer Sewing Machine* case bring it within a recognized exception to the rule. In the case before us there is nothing to suggest that it is within any exception to the rule.

From what has been said, it follows that the judgment is reversed, and the cause remanded for further proceedings.

REVERSED.

---

The following opinion on motion for rehearing was filed April 30, 1924. *Affirmed on condition.*

Heard before MORRISSEY, C. J., LETTON, ROSE and DAY, JJ., BLACKLEDGE and REDICK, District Judges.

PER CURIAM.

This case was before this court on a former occasion, our opinion being reported *ante,* p. 101. By our former opinion the judgment in favor of the plaintiff for $2,266.74 with interest, amounting in the aggregate to $3,220.13, was reversed for reasons therein stated, and the cause remanded for further proceedings. The plaintiff filed a motion for a rehearing, upon which a reargument

was ordered by the court. In the motion for a rehearing, the plaintiff states that, if the views of the court as expressed in the opinion are adhered to, to the effect that the defendant is entitled to credit for the value of new goods placed by him in the stock, and also for the expense of operating the store in making the sales, then he be permitted to file a remittitur of the total amount of the two items upon which the judgment of the lower court was reversed, and the judgment be then affirmed.

Upon a review of the record, we adhere to the conclusions reached in our former opinion, but in the state of the record we see no objection to the filing of the remittitur as suggested in the brief for rehearing, and that the judgment should then be affirmed. It is established that the defendant sold goods from the stock during the time he had possession thereof, amounting to $3,246.50. It is also shown that new goods were purchased and put into the stock by the defendant to the amount of $912.76; that the cost of conducting the store business, together with a grain business (the latter business being wholly disconnected with the matter in dispute), was $1,000, making a total of $1,912.76. Our former opinion held that there was no evidence in the record that justified the trial court in finding that $479.76 was the amount of sales of new merchandise placed in the store by the defendant. We also held that there was nothing in the record to justify the apportionment of the expense of $1,000 equally between the store business and the grain business. This was the basis upon which the judgment was reversed. It is established that the total amount of sales from the stock during the period the defendant had possession thereof amounted to $3,246.50; that the total amount of new goods placed therein was $912.76, and the cost of conducting the store and grain business was $1,000. Deducting these two items, which the plaintiff is willing to confess, leaves a balance of $1,333.74, which with interest from December 1, 1914, to the date of the judgment, April 4, 1921, aggregate $1,925.81. If the plaintiff files within 20 days a remittitur of all in excess of $1,925.81, so that

the judgment will stand as a judgment for this amount as of date April 4, 1921, the judgment of the district court will be affirmed; otherwise, it will stand reversed as stated in the former opinion.

                                        AFFIRMED ON CONDITION.