SHIMAN BROTHERS & COMPANY, INC., APPELLANT, V. NEBRASKA NATIONAL HOTEL COMPANY ET AL., APPELLEES.

9 N. W. (2d) 807

FILED MAY 28, 1943. No. 31487.

*Rosewater, Mecham, Shackelford & Stoehr,* for appellant.

*Gaines & Shoemaker, Brown, Crossman, West, Barton & Fitch* and *Charles C. Evans, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is an action at law to recover damages in the amount of $45,965.95 for the loss of a salesman's trunk containing a quantity of jewelry. The trial court sustained the motion of the defendants to dismiss at the close of plaintiff's case and plaintiff appeals.

The plaintiff, Shiman Brothers & Company, Inc., is engaged in the wholesale jewelry business in New York City. On June 5, 1939, Milton J. Jackson, executive vice-president of, and traveling salesman for, plaintiff left on a sales trip which was to take him to Pittsburgh, Chicago, Detroit and other cities in the middle west. The jewelry was carried in trays placed in two leather sample cases which were in turn placed in what appeared to be an ordinary ward-

robe trunk, identified only by the initials "M. J. J." on the exterior. On July 12, 1939, Jackson was in Des Moines a part of the day and in the afternoon left for Omaha. On arrival at Omaha in the evening he registered as a guest at the Paxton Hotel, a hostelry owned and operated by the defendant, Nebraska National Hotel Company. He was assigned to room 1127 on the 11th floor and had the trunk of jewelry brought to his room that evening, he remaining with it constantly until the next morning. The trunk was at all times checked as baggage by Jackson on his railroad tickets without revealing or declaring that it contained a valuable collection of jewelry. Transportation of the trunk between railroad stations and hotels on the entire trip was by taxicabs or local baggage carriers, without notice of the value of the contents. During his stays in the various cities where he called upon his customers, Jackson kept the trunk and its contents in his hotel room without advising the hotel management of its contents or value.

On July 13, 1939, after completing his calls on Omaha customers, Jackson returned to the Paxton Hotel and directed a uniformed porter of the hotel to make a Pullman reservation for him on a night train to Denver. Shortly thereafter he telephoned the porter's desk to send some one to his room for his trunk. A different uniformed porter went to his room, gave him a baggage check of the defendant, Railway Express Agency, for transportation of the trunk from the Paxton Hotel to the Union Station. The porter then told Jackson that the transfer company had just left with a load of trunks and that it would be from 30 to 45 minutes before the trunk would be called for. The testimony of Jackson is that he then said: "And I told him to be sure and keep that trunk in a place of safe-keeping, which is the baggage room, until such time as they called for that trunk, as it contained a very large amount of valuable jewelry." The porter then took the trunk to the first floor of the hotel. Jackson thereupon left the hotel and did not return until 8:30 p. m., when he was informed that the trunk had been left on the loading platform and that it

had been stolen from there. The evidence is that the trunk had been left on the loading dock unguarded while waiting for the Railway Express Agency truck to call for it. The thieves have not been apprehended, nor the jewelry recovered.

It is the contention of the plaintiff that Jackson was a paying guest at the hotel and that in taking charge of his trunk it was performing service for him. Plaintiff also contends that the delivery of the baggage check to Jackson by the hotel porter was by virtue of an agency relationship between the Railway Express Agency and the Nebraska National Hotel Company and constituted an immediate acceptance of the trunk by both as bailees for hire. Plaintiff contends that the loss of the trunk was due to the negligence of both defendants in placing the trunk on the loading platform of the hotel and leaving it unguarded.

The defendant express company alleges that it is a common carrier and denies that the hotel porter was its agent to receive baggage for it, or that it or its authorized agents ever had possession of the trunk before it was stolen. The negligence of plaintiff and its agent Jackson is alleged as the proximate cause of the loss. The express company also contends that the plaintiff is not the real party in interest. Other defenses are alleged which are not material to this appeal as we view it.

The defendant hotel company contends that plaintiff has been paid the full amount of its loss and that it is not, therefore, the real party in interest. The hotel company further contends that its liability is limited by section 41-118, Comp. St. Supp. 1941, and section 41-119, Comp. St. 1929, that plaintiff failed to comply therewith and that liability, consequently, does not attach. This defendant also claims that the loss was due to the negligence of Jackson, the plaintiff's agent, and not to any negligence upon the part of the hotel company.

After hearing the evidence of the plaintiff upon these issues the trial court dismissed the action. Did the trial court err in entering this order?

The dismissal of plaintiff's case at the close of plaintiff's evidence is in effect a directed verdict for the defendants. It has been the rule, often announced, that in considering the correctness of the court's action in sustaining a motion for a directed verdict, all relevant and material evidence and every inference reasonably deducible therefrom will be treated as true. Plaintiff is entitled to the benefit of this rule in the present case.

The record discloses, for the purposes of this appeal, that the stolen jewelry had a market value of $45,965.95. It is also shown that the loss was protected by insurance in the St. Paul Fire and Marine Insurance Company and that on August 21, 1939, said insurance company loaned plaintiff $27,967.82 to be repaid from any recovery made from any other person or corporation for the value of the lost jewelry. The market value of the lost jewelry was fixed by Jackson, an experienced salesman of jewelry. On cross-examination, however, he testified that the $27,967.82 which had been advanced to plaintiff covered the entire amount of the loss sustained by the robbery. It is urged by defendants that by reason of the foregoing facts the insurance company has become the real party in interest and the only party who could maintain the action under the provisions of section 20-301, Comp. St. 1929, which provides that every action must be prosecuted in the name of the real party in interest. The position assumed by the defendants on this question cannot be sustained. The proper measure of damages for property lost by the negligence of a bailee is the reasonable market value of such property. *Gibbons v. Chicago, B. & Q. R. Co.*, 98 Neb. 696, 154 N. W. 226. The reasonable market value of the stolen jewelry for the purposes of this appeal is $45,965.95. It is true that the record shows that the insurance company loaned plaintiff $27,-967.82, the full amount of its liability on its obligation as insurer. But the record does not show that the $27,967.82 was the reasonable market value of the stolen jewelry. The basis for computing the liability under the insurer's contract is not shown by the record. Consequently, the sum

of $27,967.82 must be considered the amount of the insurer's liability, and treated only as a part of the loss sustained by the plaintiff. Under this state of facts plaintiff is the real party in interest. The applicable rule is: "Under statutes providing that every action must be prosecuted in the name of the real party in interest, it is generally held that if the insurance paid by an insurer covers only a portion of the loss, * * * the right of action against the wrongdoer who caused the loss remains in the insured for the entire loss, and the action must be brought by him in his own name." 29 Am. Jur. 1016, sec. 1358. See, also, *Webb v. Southern Ry. Co.*, 235 Fed. 578; *Illinois Power & Light Corporation v. Hurley*, 49 Fed. (2d) 681.

In the instant case the $27,967.82 was paid to plaintiff in the form of a loan, unaccompanied by any kind of an assignment of plaintiff's cause of action against the defendants. This type of loan was carefully considered in *Luckenbach v. McCahan Sugar Refining Co.*, 248 U. S. 139, 39 S. Ct. 53, wherein the court said: "Agreements of this nature have been a common practice in business for many years. * * * It is clear that if valid and enforced according to their terms, they accomplish the desired purpose. They supply the shipper promptly with money to the full extent of the indemnity or compensation to which he is entitled on account of the loss; and they preserve to the insurers the claim against the carrier to which by the general law of insurance, independently of special agreement, they would become subrogated upon payment by them of the loss. The carrier insists that the transaction, while in terms of a loan, is in substance a payment of insurance; that to treat it as if it were a loan, is to follow the letter of the agreement and to disregard the actual facts; and that to give it effect as a loan is to sanction fiction and subterfuge. But no good reason appears either for questioning its legality or for denying it effect. The shipper is under no obligation to the carrier to take out insurance on the cargo; and the freight rate is the same whether he does or does not insure. The general law does not give the carrier, upon payment of the

shipper's claim, a right by subrogation against the insurers. The insurer has, on the other hand, by the general law, a right of subrogation against the carrier. Such claims, like tangible salvage, are elements which enter into the calculations of actuaries in fixing insurance rates; and, at least in the mutual companies, the insured gets some benefit from amounts realized therefrom. It is essential to the performance of the insurer's services that the insured be promptly put in funds, so that his business may be continued without embarrassment. Unless this is provided for, credits which are commonly issued against drafts or notes with bills of lading attached, would not be granted. Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction. Compare *The Kimball,* 3 Wall. 37, 44. The insurer could not have been obliged to pay until the condition of their liability (i. e., nonliability of the carrier) had been established. The shipper could not have been obliged to surrender to the insurers the conduct of the litigation against the carrier, until the insurers had paid. In consideration of securing them the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice." We conclude that plaintiff is the real party in interest and entitled to maintain the action.

The plaintiff alleged in its petition, and now contends, that the Railway Express Agency was a bailee for hire as a common carrier and is therefore liable as an insurer. In order to hold the express company, on its liability as a common carrier in the loss of the trunk and its contents, plaintiff must establish that the trunk was unconditionally delivered to it for immediate transportation and that it was accepted for that purpose. The possession of the baggage check of the express company by Jackson was *prima facie* evidence that the baggage it represents had been so delivered to the express company, and in the absence of any oth-

er evidence on the subject it is sufficient to sustain a judgment against the express company as an insurer of the baggage entrusted to it as a common carrier. But the possession of a baggage check is not conclusive upon the carrier that it became possessed of the baggage represented by the baggage check. The burden is upon the carrier, however, to prove the contrary. *Chicago, B. & Q. R. Co. v. Steear,* 53 Neb. 95, 73 N. W. 466. The evidence shows that the trunk and contents were delivered to the hotel porter in Jackson's room in the hotel. Knowing that the defendant express company was to transport the trunk to the railroad station, the porter, as a matter of convenience, used the baggage checks of the defendant express company for identification purposes. The trunk was taken to the first floor of the hotel and left unguarded on the loading dock. It never came into the possession of an employee of the express company. The use of the baggage check by the hotel porter under the circumstances shown is insufficient to sustain a finding that the trunk came into the possession of the Railway Express Agency as an unconditional delivery to it for immediate transportation. We think this conclusion is sustained by the decisions in *Chicago, B. & Q. R. Co. v. Powers,* 73 Neb. 816, 103 N. W. 678, and *Burrowes v. Chicago, B. & Q. R. Co.,* 85 Neb. 497, 123 N. W. 1028. See, also, *R. J. Reynolds Tobacco Co. v. Boston & M. R.,* 298 Mass. 152, 10 N. E. (2d) 59.

The question then arises whether the express company came into possession of the trunk because of any existing agency relationship. In other words, was the hotel porter the agent of the express company? There is no evidence in the record of the existence of any agency relationship between the hotel or any of its employees and the express company, except for any inferences that might be drawn by the use of the baggage check. There is no evidence that the defendant express company exercised any control or direction over the hotel porter, or that it paid him any compensation for his services. All of the elements of an agency relationship are absent and the evidence is consistent with

the express company's claim that the hotel porter was employed solely by the Paxton Hotel. Where it appears that the express company never came into actual possession of the trunk for immediate transportation, no liability as an insurer by virtue of its status as a common carrier could arise. In order for liability to attach because of negligence on the part of its agents it would be necessary to prove the agency of the persons alleged to have negligently caused the loss. There is no evidence in the record of any such agency relationship sufficient to sustain a finding that it existed. We conclude therefore that plaintiff has failed to make a case against the express company, either on the theory that it was an insurer because of its status as a common carrier, or on the theory that the loss occurred as a result of the negligence of its agents or employees. Consequently, the trial court properly directed a verdict for the Railway Express Company.

As to the defendant hotel company, the situation is altogether different. The evidence recited in this opinion, standing alone, is sufficient to sustain a finding that the hotel company was negligent in the manner in which it cared for the trunk. The hotel company alleges that the loss was due to the contributory negligence of plaintiff's salesman Jackson. The hotel company has not as yet produced its evidence on this issue. An examination of the record does not reveal such contributory negligence on his part as would warrant a finding that as a matter of law a recovery could not be had.

It is urged by the defendant hotel company that Jackson failed to comply with the provisions of the statutes necessary to establish the liability of an innkeeper for the loss of a valuable quantity of jewelry and that no liability for the loss of the trunk therefore exists. Comp. St. Supp. 1941, sec. 41-118, and Comp. St. 1929, sec. 41-119. Plaintiff contends that before the hotel company can claim any benefit from these sections it must appear that all conditions precedent contained in the statutes have been met by the hotel company. The case of *Leon v. Kitchen Bros. Ho-*

*tel Co.*, 134 Neb. 137, 277 N. W. 823, is cited in support
thereof. In that case we held that where a hotel company
claims the benefit of a statute altering its common-law
liability, the burden is on it to show compliance with the
provisions of such statute on its part. The correct rule is:
"Whether innkeepers are held liable as insurers of goods
of their guests, or only for negligence, proof that goods of
a guest have been lost or injured makes out a *prima facie*
case of liability and casts on the innkeeper the burden of
establishing such facts as will exonerate him. Thus the
burden of proving plaintiff's contributory negligence is on
the innkeeper. Also where an innkeeper claims the benefit
of a statute, altering his common-law liability, the burden
is on him to show compliance with the statute." 32 C. J.
559. The hotel company, having alleged the contributory
negligence of the plaintiff and the statutes limiting the lia-
bility of innkeepers as defenses, the burden is upon it to
sustain them with proof. There being nothing in plaintiff's
evidence showing that either of these defenses bar a recov-
ery as a matter of law, a directed verdict cannot be sus-
tained on either of these grounds.

There is a further reason why the motion to dismiss as
to the hotel company was improperly sustained. A statute
regulating or limiting the liability of an innkeeper applies
only to his common-law liability as an insurer and has no
application where the cause of action of the guest is based
solely on the negligence of the innkeeper in caring for prop-
erty entrusted to him. The following authorities sustain
this rule:

"However, even though the innkeeper has complied with
the statute and the guest has deposited his property for
safe-keeping, if the loss is occasioned by the negligence, or
wrongful act of the innkeeper or his servants or employees,
he is nevertheless liable, since the statutes have not removed
the common-law liability in this respect." 28 Am. Jur. 591,
sec. 74.

"Likewise the exemption ceases when the goods are
packed for departure and the innkeeper is so informed. Ex-

cept in some jurisdictions, an innkeeper by complying with the statute on the subject does not relieve himself from all liability for the safety of the goods of his guests, if they fail to place them in his actual custody, but only from his liability as an insurer; he is still liable for a loss caused by the default or negligence of himself or his servants. Indeed, a statute regulating or limiting the liability of an innkeeper is not applicable where the guest bases his cause of action solely on the negligence of the innkeeper in keeping property deposited with him and not upon his common-law liability as an insurer." 32 C. J. 552.

"Where a hotel company has complied with the provisions specified by the statute for the purpose of relieving it from liability for the money and articles of a guest specified therein, if a guest, on account of convenience to himself, sees proper to retain his money on his person or in his own room, he does so at his own risk in the absence of pleading and proof of actual negligence on the part of the hotel company." *Leon v. Kitchen Bros. Hotel Co., supra.* See, also, *Hyman v. South Coast Hotel Co,* 146 App. Div. 341, 130 N. Y. Supp. 766; *Chatillon v. Cooperative Apartment Co.,* 90 Misc. 108, 152 N. Y. Supp. 593; *Benjamin v. Colonial Hotel Co.,* 268 Pa. St. 459, 112 Atl. 54.

It is evident in the present case that the fact that plaintiff's salesman did not keep the jewelry in the hotel safe did not contribute to the loss. In any event, it would have been necessary to deliver it to the express company and if the loss occurred by reason of the negligence of the hotel and its employees while such delivery was being made, the liability arose by virtue of the negligence of the hotel company and not because of any liability as an insurer. In a case involving very similar facts, the Illinois court said: "The innkeeper's act did not apply to the situation at all. The stay of the plaintiff at the defendant's hotel as a guest was about to terminate, and if she was responsible for the care and protection of the jewelry up to that time for the reason that she did not deposit it with the defendant, the property could not remain in the iron safe while she was

taking her departure from the hotel with it. When she packed her goods to leave the hotel and gave them in charge of the porter sent to receive them, there was no requirement of the statute that they should be on deposit in the safe." *Rockhill v. Congress Hotel Co.*, 237 Ill. 98, 86 N. E. 740. We conclude therefore that the present suit is predicated on the negligence of the hotel company, its agents and servants, and that the statute modifying the common-law liability of the hotel company as an insurer has no application. We conclude, also, that such a statute has no application where a guest has begun his departure from the hotel and has delivered his baggage to a hotel porter for safe delivery to a transportation company. The evidence being sufficient to take the case to the jury on the question of the negligence of the hotel company, the order of dismissal entered by the trial court was erroneous.

Plaintiff alleges as error the rulings of the trial court in excluding the testimony of Fred Franks as to certain statements made to him by Leon Mutz, a baggage porter at the Paxton Hotel. It appears that after the trunk of jewelry was stolen, Franks, as inspector of detectives of the Omaha police department, carried on an investigation in an attempt to discover the perpetrators of the crime. One of the persons interviewed was Leon Mutz, who told Franks that he was the porter who took the trunk in question from Jackson's room to the loading platform, left it there unattended and reported to the head porter that he had placed the trunk on the loading dock. The applicable rule is: "An admission of an agent may be received in evidence against his principal, where the agent, in making the admission, was acting within the scope of his authority, and the transaction or negotiation to which the admission relates was pending at the time when it was made. * * * The admission which it is sought to use must have been made in connection with the discharge of the agent's duty, must have been based on his own knowledge, and must be a statement of fact, rather than an expression of opinion." 22 C. J. 367. See, also, 20 Am. Jur. 505, sec. 596. This rule has

been approved by this court in *Broz v. Omaha Maternity & General Hospital Ass'n,* 96 Neb. 648, 148 N. W. 575; *Finegold v. Union Outfitting Co.,* 110 Neb. 202, 193 N. W. 331; *Wert v. Equitable Life Assurance Society,* 135 Neb. 654, 283 N. W. 506. While it is competent for an agent to testify to admissions against interest made by him, it is not essential that he be called as a witness to establish such admissions. Such admissions may be proved by a third person. We think the trial court erred in excluding the evidence of Franks offered as proof of the admissions against interest made by the hotel porter, Leon Mutz.

Defendants have filed a motion to quash the bill of exceptions for the reason that it was not settled by the trial court as required by section 20-1140, Comp. St. 1929. The bill of exceptions consists of three volumes. The first volume contained a transcription of the oral evidence and certain exhibits and was properly certified by the trial court. The other two volumes were not separately certified by the trial court. The second volume was a record book which was offered in evidence and because of its bulk was certified to separately by the court reporter. The third volume consisted of a number of written exhibits which because of their bulk were placed in a large envelope, certified to by the reporter and designated as volume 3 of the bill of exceptions. These exhibits designated as volumes 2 and 3 were shown to have been described, identified, offered and admitted in evidence by the record appearing in the volume of the bill of exceptions, which was properly settled by the trial judge. Exhibit 1-A, the book constituting volume 2 of the bill of exceptions, is referred to in volume 1 as follows: "The said exhibit 1-A so received in evidence, being too cumbersome to be attached hereto, is transmitted herewith under separate cover." The exhibits constituting volume 3 are referred to in similar language in volume 1 of the bill of exceptions. It is customary, and we think proper, to incorporate bulky exhibits by reference as a part of the bill of exceptions. There is no other satisfactory way for large books, guns, mechanical devices and other bulky exhibits to

be made a part of the record; and where it appears that they have been properly described, identified and referred to in the record, which had been certified to by the proper officers, they are properly a part of the bill of exceptions and the bill is not subject to a motion to quash. See *State v. Paxton,* 75 Neb. 214, 219, 106 N. W. 166, 108 N. W. 159.

For the reasons herein stated, the order dismissing the action as to the defendant Railway Express Agency is affirmed, and as to the defendant Nebraska National Hotel Company, the order is reversed and the cause remanded for a new trial.

AFFIRMED IN PART AND REVERSED IN PART.