RUDOLPH TESAR, APPELLEE, v. VERN A. BARTELS ET AL., APPELLANTS.

32 N. W. 2d 911

Filed June 29, 1948. No. 32330.

*Coffey & Jorgensen,* for appellants.

*James J. Fitzgerald* and *Eugene F. Fitzgerald,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

BARTOS, District Judge.

This action in replevin was commenced in the municipal court for the city of Omaha, Nebraska, by the appellee, Rudolph Tesar, against Vern A. Bartels and Viola H. Bartels, appellants. For convenience the appellee will be hereafter designated as plaintiff and the appellants as defendants.

The plaintiff seeks to recover from the defendants the possession of over 1,100 articles of personal property enumerated in the affidavit for replevin. Most of the articles are such as are usually used in the operation of a beer tavern and restaurant.

The affidavit in replevin was filed on the 9th day of May, 1946. A writ of replevin was issued from said court on the same day. The officer's return to the writ discloses that on the same day he replevied the goods and chattels enumerated in the writ and that he left them in possession of the defendants at plaintiff's request.

An appeal was perfected from the municipal court to the district court for Douglas County, Nebraska. A trial to a jury was had and the jury returned a verdict for the plaintiff as follows: "We, the jury duly impaneled and sworn in the above entitled cause, do find for the said Plaintiff and that he is entitled to the possession of said goods, chattels and personal property or the reasonable value of $932.21."

The court then entered the following judgment: "Whereupon, the above verdict of the jury having been received and entered, it is considered, ordered and adjudged that the right of property and the right of possession of" (describing all of the articles of personal property as enumerated in the affidavit in replevin) "taken under the writ of replevin in this cause, at the time of the commencement of this action be, and hereby is, confirmed in the defendants, and that the plaintiff return said described property into the possession of the defendants.

"It is further considered, ordered and adjudged, in event return of said property cannot be made, that the said defendant have and recover of and from the plaintiff the sum of $932.21, the value of said property as by the verdict of the jury assessed."

From this judgment the defendants appealed to this court. The defendants base their claim for the reversal of the case on two propositions, to-wit: (1) "That there is not sufficient evidence to show that the defendants had at any time any of the property belonging to the plaintiff," except a few specified articles, and (2) "There was no evidence that the defendants had at the commencement of the replevin suit, to-wit, May 9, 1946,

any of said property in their possession or under their custody or control," except a few specified articles.

As these propositions involve a review of the evidence introduced in the case, a brief outline of events as disclosed by the record leading to the transactions involved will materially aid in following the evidence hereafter outlined.

James Prohaska was, on and prior to April 26, 1943, the owner and operator of two beer taverns in the city of Omaha, one operated under the name of the "Gay Bar" and the other under the name of the "Arch Bar." The contents of the Arch Bar were sold at public sale by the constable sometime prior to April 26, 1943, but the date of sale is not satisfactorily shown by the evidence. Prohaska discontinued the operation of the Gay Bar prior to April 26, 1943. On that day Prohaska and the defendants entered into a partnership agreement, whereby they were to operate the Arch Bar, which in due time was named and operated as the "Union Labor Bar." The plaintiff in this action was acting as attorney for Prohaska in the formation of the partnership, during its stormy continuation, and until its final dissolution. He advanced money for Prohaska during his illness and hospitalization and at other stated periods. In consideration of the legal services rendered and the money so advanced, a bill of sale was executed to the plaintiff by Prohaska on the 29th day of November, 1945, covering the articles of personal property involved in this litigation. The partnership between the defendants and Prohaska was dissolved March 25, 1944.

The plaintiff contends that the property involved in this litigation was removed with other property by Prohaska from the Gay Bar to the Arch or Union Labor Bar after the formation of the partnership and while the Arch or Union Labor Bar was under the sole control and management of the defendants, a demand was made on the defendants for the delivery of the property, and the defendants refused to comply therewith.

The defendants contend that they never received any of the involved personal property into their possession, except a few specific articles for which they settled with Prohaska at the time of the dissolution of the partnership. They further contend that they bought most of the questioned property at a constable's public sale when the contents of the Arch Bar were sold before the formation of the partnership.

Prohaska testified that prior to 1943 he operated the Arch Bar for over five years and also operated another bar named the Gay Bar. He and the defendants, on the 26th day of April, 1943, entered into a partnership for the operation of the Arch Bar for a period of ten years. They renamed the place and thereafter it was known as the Union Labor Bar. The defendants had the complete management of the place and the witness took no active part in its management or its actual operation. Difficulties between the partners commenced after four or five months of operation and the partnership was dissolved sometime in March, 1944. The witness, in the early part of May, 1943, made a correct and accurate list of all the equipment that he moved from the Gay Bar into the Arch or Union Labor Bar. The list was introduced in evidence as exhibit No. 5 and it showed some articles marked out by a line drawn through them. These articles were from time to time removed by the witness and a receipt for them given to defendants. The articles not marked out are the articles involved in this lawsuit. He further testified that he was at the Union Labor Bar when the articles were delivered and placed there in the possession of the defendants. He further testified that the night before the trial of the case he went to the Union Labor Bar and found some of the articles which he designated on exhibit No. 6 by the letter "O". This exhibit was another list prepared by the witness and introduced. He further testified that on July 30, 1945, he, the defendants, the plaintiff, and an auditor met at the Union Labor Bar by prearrangement and went over

the property item by item. The defendants did not dispute any of the articles except the dishes and after he pointed out the pattern on them Bartels did not dispute his ownership of them, but later on would not permit him to remove any of the property except some little odds and ends. He further testified that all of said articles were hauled from the Gay Bar to the Arch Bar by a drayman and that he never gave the defendants permission to sell or to retain and use any of the items placed there by him.

The plaintiff testified on cross-examination that he had personal knowledge that the goods as described in the inventories were there at the time the bill of sale was executed to him by Prohaska and that some of the goods were there on May 9, 1946, but he was unable to enumerate them item by item.

The drayman and his helper on behalf of the defendants testified that they did not take any of the articles from the Gay Bar to the old Arch Bar but stored them in a building designated as Jensen Laundry.

The defendant Vern A. Bartels testified that at and prior to the time of the dissolution of the partnership on April 24, 1945, they did not have in their possession any of the articles enumerated in exhibit No. 6, the same being the articles involved, except some plywood and some two by fours which he bought or agreed to buy from Prohaska. He further claimed that some of the articles involved were bought by him from Fiedler at the constable's sale, or from Prohaska, or from other persons; that some of the articles in dispute were stored in the Jensen Laundry building. He further testified that none of the articles involved were in defendants' possession on May 9, 1946, when the affidavit for replevin was filed.

The constable who executed the writ of replevin testified that he did not see the property, but defendant Bartels told him that some of the property was there but "he didn't know where it was at." He left everything

in the place because the plaintiff told him to do so. He did not know which items were in defendants' possession.

The defendants argue that the plaintiff has utterly failed to prove that the property in dispute was in defendants' possession on the 9th day of May, 1946, at the time of the commencement of this action in the municipal court of Omaha and therefore there can be no recovery of the property or damages by the plaintiff from the defendants.

While the defendants' answer alleged, after denying the ownership and the right to possession of the property in the plaintiff, that the transfer of title to the property by Prohaska to the plaintiff was made without consideration and in furtherance of a conspiracy between them to fraudulently place title to said property in plaintiff's name for the purpose of defeating Prohaska's creditors, the case was actually tried and submitted to the jury on the sole issue: Was there a wrongful detention of the property by the defendants at the time of the commencement of the action? The defendants strenuously contend that there was no evidence introduced by the plaintiff that the defendants had possession of the property on May 9, 1946, when the replevin action was commenced and therefore the plaintiff failed to establish his right to recover. The defendants anchor their contention on the holdings of this court in several cases where the following rule of law has been announced, to-wit: "In an action of replevin the inquiry is of the property in possession of and wrongfully withheld from the plaintiff by the defendant at the commencement of the suit. There can be no recovery of damages by plaintiff for property of which the defendant had not possession or control when the case was begun." Burr v. McCallum, 59 Neb. 326, 80 N. W. 1040, 80 Am. S. R. 677. The defendants in support of their contention also cite to the same effect Heidiman-Benoist Saddlery Co. v. Schott, 59 Neb. 20, 80 N. W. 47; Depriest v. McKinstry, 38 Neb. 194, 56 N. W. 806; Wilkins v. Redding, 70 Neb.

182, 97 N. W. 238; and Frank v. Stearns, 111 Neb. 101, 195 N. W. 949. That undoubtedly is the accepted rule of law in all jurisdictions and must be adhered to, but after reading the cases we do not believe they go to the extent of holding that it is necessary to show that the plaintiff or his witnesses actually saw the property in the possession of the defendant on the day the replevin action was brought. If that be a necessary requirement, very few replevin actions could be maintained. The plaintiff would be denied the right of inspection by the defendant. The property may consist, as in this case, of a large number of items and an inventory necessarily taken, all of which could be and undoubtedly would be frustrated by the defendant. Other reasons suggest themselves why that, in the majority of cases, would be impossible to establish.

If testimony is introduced from which the jury could reasonably infer possession of the property on the date of the commencement of the action, that is all that should be required.

"It is well established that when the existence of a person, a personal relation, or a state of things is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." 20 Am. Jur., Evidence, § 207, p. 205.

This court has applied the foregoing rule of law in several cases, none of which however were actions in replevin. Davenport v. Intermountain Railway, Light & Power Co., 108 Neb. 387, 187 N. W. 905; Lincoln Joint Stock Land Bank of Lincoln v. Bexten, 125 Neb. 310, 250 N. W. 84; Reitz v. Petersen, 131 Neb. 706, 269 N. W. 811; Finegold v. Union Outfitting Co., 110 Neb. 202, 193 N. W. 331.

That this rule of law applies in replevin actions has been held in the case of Wails v. Farrington, 27 Okla. 754, 116 P. 428, 35 L. R. A. N. S. 1174, wherein a replevin

action was brought to recover possession of a certain stock of jewelry or its value. It appears that possession of the jewelry was delivered to defendant February 15, 1904, the action was commenced December 9, 1904, and the court held that, "'possession being a fact continuous in its nature, when its existence is once shown, it will be presumed to continue until the contrary is proved.'" This rule was followed in another replevin action, Bardon v. Endejan, 128 Okla. 293, 262 P. 693, decided in 1928, to recover possession of a diamond ring. The court after citing the fifth paragraph of the syllabus in the Wails v. Farrington case, *supra,* said: "The defendant having been shown to be in possession of the property sought to be recovered prior to the commencement of this action, the burden was upon him to show that he had parted with such possession prior to the commencement of the action, and the burden thus being upon him, it was not error for the trial court to overrule the demurrer to the evidence."

The Wails v. Farrington case, *supra,* was approved of in another replevin action, Beck v. Day, 178 Okla. 310, 62 P. 2d 1014, decided in 1936, involving the right of possession of a certificate of stock, delivered according to the testimony to the defendant about July 1927 and was never returned. The action was commenced April 24, 1929.

The Supreme Court of Oklahoma in the Wails v. Farrington case, *supra,* based its decision on the case of Nichols v. Dodson Lead & Zinc Co., 85 Mo. App. 584, where the Missouri court on page 586 said: "It is insisted that there is no evidence that the appellant was in possession of the property at the time the suit was instituted. This contention is not well founded. The evidence is that the zinc company had been in possession of the chattels just prior to the institution of the suit, and that it sold them on the day it was instituted, but there is nothing to show when (if ever) the property was delivered to the purchaser. There being proof of a previous possession

by the company the onus was on it to show that it had parted with it prior to the beginning of the action."

The general rule of law as stated in American Jurisprudence, *supra,* having been adopted by this court, no valid reason exists why it should not be applied with the same force and effect in a replevin action. There was sufficient evidence of prior possession introduced in this case to submit the question to the jury. The jury having resolved the same in favor of the plaintiff, this court must adopt the verdict of the jury as final for it is elementary that disputed questions of fact, and the credibility of witnesses as well, are for the jury.

It is apparent from the record in this case that the judgment rendered is not in accordance with the verdict of the jury and that all parties to this action in the district court apparently overlooked the discrepancy between the verdict and the judgment entered. We have come to the conclusion that the verdict of the jury is correct and the same should be upheld. The judgment erroneously rendered on the verdict should be reversed. Judgment in conformity with the verdict should be entered by the district court as of the date of the verdict, and it is so ordered with all costs taxed to appellants.

REVERSED AND REMANDED WITH INSTRUCTIONS.